[Cite as *Wineberry v. N. Star Painting Co.*, 2012-Ohio-4212.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT


| | | |
|---|---|---|
| WILLIAM WINEBERRY, | ) | CASE NO.   11 MA 103 |
| | ) | |
| PLAINTIFF-APPELLANT, | ) | |
| | ) | |
| VS. | ) | O P I N I O N |
| | ) | |
| NORTH STAR PAINTING CO., et al., | ) | |
| | ) | |
| DEFENDANTS-APPELLEES. | ) | |


CHARACTER OF PROCEEDINGS:     Civil Appeal from Common Pleas Court,
                              Case No. 09CV1559.

JUDGMENT:                     Affirmed.

APPEARANCES:
For Plaintiff-Appellant:      Attorney Jeffrey Leikin
                              Attorney Brenda Johnson
                              1370 Ontario Street, Suite 100
                              Cleveland, Ohio  44113-1708

For Defendants-Appellees:     Attorney John Pfau
                              P.O. Box 9070
                              Youngstown, Ohio  44513

JUDGES:
Hon. Joseph J. Vukovich
Hon. Gene Donofrio
Hon. Cheryl L. Waite


                              Dated:  September 14, 2012

[Cite as *Wineberry v. N. Star Painting Co.*, 2012-Ohio-4212.]
VUKOVICH, J.

**{¶1}** Plaintiff-appellant William Wineberry appeals the decision of the Mahoning County Common Pleas Court granting summary judgment in favor of defendant-appellee North Star Painting Company, Inc. The trial court ruled that there was no evidence presented that created a genuine issue of material fact that North Star intended to injure Wineberry. Specifically, the trial court found that under R.C. 2745.01(C) there was not a rebuttable presumption of intent to injure by the deliberate removal of a safety device because to deliberately remove a safety device requires that the device was originally contained on the object in question. In this case, the alleged safety device, guardrails, were not.

**{¶2}** Wineberry finds fault with the trial court's narrow interpretation of deliberate removal and contends that a rebuttable presumption was created because guardrails were not installed around the perches Wineberry was required to use to perform his job. That failure to act, according to him, amounts to a deliberate removal. North Star disagrees with Wineberry's position and contends the trial court's interpretation is correct.

**{¶3}** For the reasons expressed below, we find the trial court's interpretation of deliberate removal to be overly narrow. Deliberate removal, as contemplated by R.C. 2745.01(C), not only encompasses the act of removing a safety device, but also the act of failing to install a safety device that is required by the manufacturer. That said, summary judgment is still warranted because there is no evidence to support the position that the perches were required to have guardrails. Thus, the trial court's decision is hereby affirmed.

Statement of Case

**{¶4}** On July 21, 2008 Wineberry filed an employer intentional tort action against North Star. This action was the result of an injury that occurred to Wineberry on July 24, 2006, while in Ashland, Kentucky working on the 13th Street Bridge. North Star was hired by the State of Kentucky to paint the bridge; Wineberry was employed by North Star as a painter/sandblaster. His injury occurred while he was sandblasting a part of the bridge. According to him, he was out on a perch that extended from the swing stage of the scaffolding when the scaffolding buckled and

he fell approximately 15 feet. During the fall he sandblasted his arm. In the complaint it is alleged that at the time of incident, the perch and scaffolding lacked the necessary and required safety equipment and fall protection which would have prevented the incident.

**{¶5}** North Star answered the complaint on July 1, 2009. Extensive discovery by way of depositions then occurred.

**{¶6}** In August 2010, North Star filed a motion for summary judgment arguing that R.C. 2745.01, the statute on employer intentional torts, is applicable and there is no evidence that North Star intended to cause injury to Wineberry. On September 16, 2010, Wineberry filed a motion in opposition to summary judgment. He contended that the failure to have safety guards is evidence of intent to cause injury. He cited to R.C. 2745.01(C), the section on deliberate removal of safety guards. North Star replied in January 2011.

**{¶7}** In March 2011, the magistrate issued its decision. The magistrate applied R.C. 2745.01 and found that there is no evidence that North Star directly intended to cause injury to Wineberry. It also found that R.C. 2745.01(C) was not applicable because there was no evidence that North Star removed a safety guard. It specifically stated:

> The statute is clear that in order to trigger Section C, there must be a deliberate removal by the employer of an equipment safety guard. The statute does not say in the construction or assembly of equipment that failure to construct or assemble the equipment with safety guards constitutes a rebuttable preemption. The legislative intent is clear from the statute and the statute cannot be rewritten beyond the clear meaning of the language. Had the legislature intended to include in Section C that the failure to install a safety guard is tantamount to deliberate removal, they would have stated it. The enactment of R.C.

> 2745.01 by the general assembly has statutory narrowed the common law definition to "direct intent" torts only.

03/31/11 J.E.

{¶8}   Wineberry objected to the decision and North Star filed responses to those objections.   Upon reviewing the objections and responses, the trial court overruled the objections, affirmed the magistrate's decision, and granted summary judgment in favor of North Star.  06/02/11 J.E.  Wineberry timely appeals.

<u>Assignment of Error</u>

{¶9}   "The trial court erred in adopting the magistrate's decision granting summary judgment in favor of defendant-appellee North Star Painting Co., Inc."

{¶10}  In reviewing a summary judgment award, we apply a de novo standard of review.  *Cole v. Am. Industries & Resources Corp.*, 128 Ohio App.3d 546, 552, 715 N.E.2d 1179 (1998).  Thus, we apply the same test as the trial court.  Civ.R. 56(C) provides that the trial court shall render summary judgment if no genuine issue of material fact exists and when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law.  *State ex rel. Parsons v. Flemming*, 68 Ohio St.3d 509, 511, 628 N.E.2d 1377 (1994).

{¶11}  The statute on employer intentional torts is R.C. 2745.01.  It provides:

{¶12}  "(A) In an action brought against an employer by an employee, or by the dependent survivors of a deceased employee, for damages resulting from an intentional tort committed by the employer during the course of employment, the employer shall not be liable unless the plaintiff proves that the employer committed the tortious act with the intent to injure another or with the belief that the injury was substantially certain to occur.

{¶13}  "(B) As used in this section, 'substantially certain' means that an employer acts with deliberate intent to cause an employee to suffer an injury, a disease, a condition, or death.

{¶14}  "(C) Deliberate removal by an employer of an equipment safety guard or deliberate misrepresentation of a toxic or hazardous substance creates a rebuttable presumption that the removal or misrepresentation was committed with intent to injure another if an injury or an occupational disease or condition occurs as a direct result." R.C. 2745.01.

{¶15} The trial court and magistrate found that Wineberry could not establish a material issue of fact that North Star specifically intended to cause injury to Wineberry and it further found that division (C) was inapplicable.

{¶16} Our analysis begins with whether the facts asserted show intent to cause injury under division (A).

{¶17} The parties dispute how this accident occurred. Wineberry stated in his deposition that he had bypassed the dead man switch on the sand blasting unit so that it would stay on. He stated he would duct tape the dead man switch every morning. (Wineberry Depo. 83). He indicated that every man operating a sandblaster would do this. (Wineberry Depo. 83). To use the sandblaster, the dead man switch had to be pressed on and when it was released, the unit would automatically shut off. Wineberry called an expert witness that stated had the right fall protection (guardrails) been utilized Wineberry would not have lost control of the sandblasting gun and would not have blasted himself with it. (Wright Depo. 73).

{¶18} North Star contends that the injury would not have occurred if Wineberry had not deactivated the dead man switch; when he fell the sandblaster would have turned off because his hand would not be on the dead man switch and he would not have gotten shot with the sandblaster.

{¶19} North Star also appears to claim that Wineberry did not fall off the perch, but instead jumped off after he accidentally sandblasted his arm. It asserts that Wineberry's version of events is not plausible. He contends that he fell 15 feet and landed on "the piece of concrete that helps cars from falling off the bridge." (Wineberry Depo. 61). His only injury was the sandblast to his arm. North Star contends that there would have been other injuries if he had fallen 15 feet and landed on concrete. Furthermore, other employees testified that the scaffolding was almost the height of the bridge roadway, not 15 feet above it. (Likouris Depo. 18; Klimis Depo. 20-21). In fact, Gus Klimis, who was working with Wineberry that day on the same scaffolding stated that he did not feel the scaffold buckle, the scaffold was at road level and that he did not know that Wineberry was injured until someone unplugged his equipment. He explained:

**{¶20}** "When it's happening was exactly on the roadway. Because like I say, I walk and open the curtains and I went out. And they told me what happened.

**{¶21}** "Q. So when you walked out of the curtains you stepped right on the roadway?

**{¶22}** "A. Yes." (Klimis Depo. 20).

**{¶23}** Thus, there are different theories as to how this injury occurred. The plausibility of the theories is for the jury to decide. On summary judgment the court views the evidence in the light most favorable to the nonmoving party. Thus, we must accept Wineberry's version of the accident that he fell 15 feet and sandblasted his arm during the fall.

**{¶24}** The testimony shows that there were fall protection policies in place. For instance the sandblasters used safety ropes; the ropes were placed around a higher beam and would help prevent the sandblasters from falling off the scaffolding. On the day of the accident, Wineberry's safety rope was not in place when he arrived at the job site. He informed his supervisors of this and was told to place the line himself. According to him, he asked for all sandblasting to stop so he could place the line. He stated that he believed he could not place the line safely while other workers were sandblasting. The supervisors would not stop the sandblasting. Therefore, he used his lanyards and tied down his 7 foot line to the scaffolding. North Star contends that Wineberry could have placed the line in the correct position without leaving the scaffolding and other sandblasting would not have prevented this. (Kalouris Affidavit paragraph 5).

**{¶25}** The fact that Wineberry's safety rope was not in place and that the supervisors would not stop the sandblasting so that he could place the line does not show an intent to injure Wineberry under division (A). The key undisputed fact that Wineberry cannot overcome is that he was told to correctly place his safety line and he did not do so.

**{¶26}** That said, we must still review to determine whether intent to injure can be shown under division (C) of R.C. 2745.01. That section we quote below, actually states that deliberate removal of safety guards creates a rebuttal presumption of intent to injure.

**{¶27}** Both the magistrate and the trial court found that this section was not applicable:

> 7. The statute [sic] R.C. 2745.01(C) states:
>
> "(C) Deliberate removal by an employer of an equipment safety guard * * * creates a rebuttable presumption that the removal * * * was committed with intent to injury another if an injury or occupational disease or condition occurs as a direct result."
>
> 8. The statute is clear that in order to trigger Section C, there must be a deliberate removal by the employer of an equipment safety guard. The statute does not say in the construction or assembly of equipment that failure to construct or assemble the equipment with safety guards constitutes a rebuttable presumption. The legislative intent is clear from the statute and the statute cannot be rewritten beyond the clear meaning of the language. Had the legislature intended to include in Section C that the failure to install a safety guard is tantamount to deliberate removal, they would have stated it. The enactment of R.C. 2745.091 by the General Assembly has statutorily narrowed the common–law definition of "direct intent" torts only.

06/02/11 J.E.

**{¶28}** Wineberry acknowledges that the trial court correctly noted that the statute does not define "deliberate removal." However, he contends that the trial court's definition of deliberate removal is too narrow. He asserts that the failure to place guardrails around the perches constitutes a deliberate removal of the guardrails. For purposes of understanding the mechanics of the scaffolding and the perch it must be explained that the scaffolding itself had a guardrail attached to the back side and a pulley system on the two ends. The fourth side, the front, was open to allow the perch to move. The perch is the unit that the sandblaster positions and moves along the front of the scaffolding to reach the outer side of the beam he is sandblasting.

{¶29} In support of his position that deliberate removal should be interpreted more broadly he directs this court to decisions from our sister districts. In those cases, the courts have provided the following definitions:

{¶30} "'[D]eliberate' as used in the statute means "'characterized by or resulting from careful and thorough consideration—a deliberate decision.'" *Forwerck v. Principle Business Ents., Inc.,* 6th Dist. No. WD–10–040, 2011–Ohio–489, quoting Merriam–Webster's Collegiate Dictionary (10 Ed.1996) 305. *See also, Fickle v. Conversion Technologies Intl., Inc.,* 6th Dist. No. WM-10-016, 2011-Ohio-2960 and *Hewitt v. L.E. Meyers Co.,* 8th Dist. No. 96138, 2011-Ohio-5413, ¶ 24.

{¶31} "'Remove' is defined in Merriam–Webster's Collegiate Dictionary (10 Ed.1996) 987 as 'to move by lifting, pushing aside, or taking away or off"; also "to get rid of: eliminate.'" *McKinney v. CSP of Ohio, L.L.C.,* 6th Dist. No. WD-10-070, 2011-Ohio-3116, ¶ 17. *See also, Hewitt* at ¶ 24. Physical separation from the machine is not required to constitute removal, rather removal may be accomplished by the act of bypassing, disabling, or rendering inoperable. *McKinney* at ¶ 17. *See also, Hewitt* at ¶ 24.

{¶32} Using these definitions our sister courts have reached the following decisions. In *Fickle*, the plaintiff was injured when her left hand and arm became caught in the pinch point of a roller at the rewind end of an adhesive coating machine, which was equipped with a "jog/continuous" switch. *Fickle* at ¶ 2. The *Fickle* court held that while the term "equipment safety guard" would be commonly understood to mean a device that is designed to shield the operator from exposure to or injury by a dangerous aspect of the equipment, "the jog control and emergency stop cable" was not an "equipment safety guard." *Id.* at ¶ 43-44. The court reached this determination because the switch was not designed to prevent an operator from encountering the pinch point on the rewind roller. *Id.* Therefore, division (C) was not met.

{¶33} In *McKinney*, the appellate court found that the plaintiff had established a rebuttable presumption of deliberate removal. *McKinney*, 6th Dist. No. WD-10-070,

2011-Ohio-3116, ¶ 28. A co-worker advised a supervisor that the machine was not working properly. The supervisor indicated that maintenance would come and repair the machine, but to continue working on it. When McKinney arrived at work she was not told that the machine was not working properly and was subsequently injured on it. The court stated that it was undisputed that the press was improperly programmed and had it been properly programmed, the safety devices would have been in place and McKinney would not have been injured. *Id.* at ¶ 27. In finding deliberate intent it reasoned:

> Given the deposition testimony in this case that a supervisor was notified there was problem with the press, a complaint he either ignored or did not appreciate the seriousness of, and, given the testimony that the workers were told to keep running the press after the complaint, and given the testimony from a CSP supervisor that "none of the right people were present" to ensure that the two safety measurers were on press 5 the night of [McKinney's] accident, we find that [McKinney] has established a rebuttable presumption that the removal was committed with intent to injure.

*Id.* at ¶ 28.

**{¶34}** In *Hewitt*, the appellate court concluded that the employer failed to rebut the presumption created in R.C. 2745.01(C) regarding deliberate removal of a safety device. *Hewitt*, 8th Dist. No. 96138, 2011-Ohio-5413, ¶ 30-36. Hewitt, an employee and second year apprentice, was installing new electrical wires when he was shocked from a live wire. At the time of his injury, he was instructed to work alone and unsupervised in a bucket, without his safety equipment. *Id.* at ¶ 31. Working unsupervised in the bucket without safety equipment violated not only the

American Line Builders Apprenticeship Training Program safety regulations, but also violated OSHA regulations. The court reasoned:

Just as in *McKinney*, in the instant case, L.E. Myers' actions cannot be described as reckless. Rather, after thorough consideration, L.E. Myers' supervisors made a deliberate decision to place Hewitt in close proximity to energized wires without wearing protective rubber gloves or sleeves. Their actions amounted to the deliberate removal of an equipment safety guard when they instructed Hewitt, a second-step apprentice lineman, not to wear his protective gloves and sleeves and by sending him alone and unsupervised up in the bucket to work with excessive amounts of electricity, despite the known safety measures and risks.

*Id.* at ¶ 34.

{¶35} L.E. Myers did not present any evidence to rebut the presumption, and as such, failed to carry its burden. *Id.* at ¶ 35. Thus, the appellate court found that the trial court did not err when it denied the employer's motion for directed verdict and motion for JNOV. *Id.*

{¶36} In all of these cases, the safety guards were actually removed. For instance in *Hewitt*, Hewitt was instructed to not wear the safety equipment he had previously worn. In *McKinney*, the machine was malfunctioning, but had it been properly programmed, the safety guards would have been in place. Therefore, even under a narrow interpretation of the statute the actions would still result in a deliberate removal.

{¶37} Here, guardrails were not actually removed, but purportedly were never put in place. Given the above case law and the language of the statute, we understand how the trial court's interpretation and reasoning is derived. The word "remove" does have a connotation of an action, not an omission. The element must be present and then eliminated; you cannot remove something when it is not there to begin with. Thus, the trial court held that the guardrail had to be on the perch and then removed in order to constitute deliberate removal.

{¶38} There is a problem, however, with such a narrow construction of the word remove. If a machine is shipped not fully assembled and the employer does not install the guard that comes with the machine, under a narrow construction it might

not be considered deliberate removal since the guard was not initially attached. For that reason, we find that the trial court's interpretation to be too narrow. Instead, we hold that a broader interpretation of deliberate removal is necessary. Thus, we hold that deliberate removal not only encompasses removing safety equipment, but also the failure to attach safety equipment provided by the manufacturer.

**{¶39}** Despite our disagreement with the trial court, summary judgment for North Star was appropriately granted. It was Wineberry's burden to show the rebuttable presumption of deliberate removal, which he did not do. There is nothing in the record to suggest that in the assembly of the perches guardrails were provided or required, but they were not attached. There is no deposition or affidavit testimony from the workers who constructed the scaffolding to indicate whether there should be guardrails attached to the perches and whether they were instructed to omit such guardrails. Furthermore, nothing in the record indicates that North Star was ever asked to put guardrails on the perches but declined to do so. The only reference in the record is North Star's averment that it did not believe it was violating any regulation by not having guardrails around the perches. (Kalouris Affidavit paragraph 3).

**{¶40}** Furthermore, although it is not conclusive evidence of deliberate removal, we additionally note that there has not been an OSHA violation cited for Wineberry's accident. See *Hewitt*, 8th Dist. No. 96138, 2011-Ohio-5413 (OSHA violation in some instances may evince deliberate removal). Likewise, it does not appear that the Code of Federal Regulations on scaffolding and guardrails definitively requires guardrails around perches. 29 CFR 1926.450 and 29 CFR 1926.451. Guardrails are required to be around the type of scaffolding that was used on this job. 29 CFR 1926.451(G)(1) and 29 CFR 1926.450. However, nothing in those sections discusses perches.

**{¶41}** Therefore, the evidence presented does not create a genuine issue of material fact as to whether there was a deliberate removal of guardrails on the perches. Since Wineberry cannot show a genuine issue of material fact as to section (A) or (C) of R.C. 2749.01, summary judgment was appropriately granted. For all the

above stated reasons this assignment of error lacks merit.  The trial court's decision is hereby affirmed.


Donofrio, J., concurs.
Waite, P.J., concurs.