HEWITT, APPELLEE, *v.* L.E. MYERS COMPANY, APPELLANT, ET AL.

[Cite as *Hewitt v. L.E. Myers Co.*, 134 Ohio St.3d 199, 2012-Ohio-5317.]

*Workers' compensation—Immunity of complying employer—Intentional tort by employer—R.C. 2745.01—"Equipment safety guard" construed.*

(No. 2011-2013—Submitted September 25, 2012—Decided November 20, 2012.)

APPEAL from the Court of Appeals for Cuyahoga County,

No. 96138, 2011-Ohio-5413.

_____

SYLLABUS OF THE COURT

As used in R.C. 2745.01(C), "equipment safety guard" means a device designed to shield the operator from exposure to or injury by a dangerous aspect of the equipment, and the "deliberate removal" of an equipment safety guard occurs when an employer makes a deliberate decision to lift, push aside, take off, or otherwise eliminate that guard.

_____

LUNDBERG STRATTON, J.

{¶ 1} We are asked to decide whether "equipment safety guard" for purposes of R.C. 2745.01(C) includes only those devices on a machine that shield an employee from injury by guarding the point of operation of that machine and whether the "deliberate removal" of such an "equipment safety guard" occurs when an employer makes a deliberate decision to lift, push aside, take off, or otherwise eliminate that guard from the machine.

{¶ 2} For the reasons that follow, we hold that as used in R.C. 2745.01(C), "equipment safety guard" means a device designed to shield the operator from exposure to or injury by a dangerous aspect of the equipment, and the "deliberate removal" of an equipment safety guard occurs when an employer

makes a deliberate decision to lift, push aside, take off, or otherwise eliminate that guard.

{¶ 3} Protective rubber gloves and sleeves are personal items that an employee controls and do not constitute "an equipment safety guard" for purposes of R.C. 2745.01(C). An employee's failure to use them, or an employer's failure to require an employee to use them, does not constitute the deliberate removal by an employer of an equipment safety guard. Consequently, the plaintiff failed to establish a rebuttable presumption of intent pursuant to R.C. 2745.01(C), and the defendant was entitled to judgment as a matter of law. We reverse the judgment of the court of appeals and enter judgment in favor of appellant.

Facts and Procedural History

{¶ 4} Appellee, Larry Hewitt, was working as an apprentice lineman for appellant, the L.E. Myers Company, an electrical-utility construction contractor. Hewitt was a second-step apprentice, meaning that he had completed the first two steps in a seven-step program, and he was now working in the field.

{¶ 5} On June 14, 2006, Hewitt was assigned to an L.E. Myers crew that was replacing old electrical power lines along Route 60 near New London, Ohio. The crew met that morning for a short daily job briefing. Workers who attended the briefing signed a daily job-briefing log. Hewitt claimed that he was late and missed the meeting that morning; nevertheless, his signature appeared on the log.

{¶ 6} Hewitt's job that day was to tie in the new power line, which was de-energized. Because the crew was short one person, Hewitt had to work by himself in an elevated bucket even though he was only an apprentice. According to the daily job-briefing log, workers were required to use protective rubber gloves and sleeves that day, which was consistent with L.E. Myers's policy, in case the lines became energized. Hewitt admitted that gloves were available, but he claimed that Dennis Law, a lineman on the job, told him that he should not

2

need the protective rubber gloves and sleeves because the line was de-energized. Law disputed the conversation. Hewitt did not wear them.

{¶ 7} Law was directing traffic and supervising Hewitt's work from the ground that day. At some point, Law yelled to Hewitt from the ground. When Hewitt turned in Law's direction, the wire in his right hand came in contact with an energized line and he received an electric shock, which caused severe burns.

{¶ 8} Hewitt applied for and received workers' compensation benefits. He also filed a claim alleging a violation of a specific safety requirement, and the parties settled that case.

{¶ 9} Hewitt filed this action against L.E. Myers alleging a workplace intentional tort in violation of R.C. 2745.01 and common law. He alleged that L.E. Myers knew with substantial certainty that he would be injured when working alone in an elevated lift bucket near energized high-voltage power lines without the use of protective rubber gloves and sleeves. Hewitt alleged that L.E. Myers in effect removed the protective rubber gloves and sleeves that were safety guards creating a barrier between him and the electrical current.[1]

{¶ 10} The case proceeded to a jury trial. At the conclusion of the plaintiff's case, L.E. Myers moved for a directed verdict as to liability under R.C. 2745.01. The trial court concluded that there was insufficient evidence to demonstrate a direct intent to harm as required by R.C. 2745.01(A) and (B). So the court limited the plaintiff's theory of recovery to R.C. 2745.01(C), according to which the employer's deliberate removal of an equipment safety guard creates a rebuttable presumption of an intent to injure.

{¶ 11} The jury returned a verdict in favor of Hewitt. The court overruled L.E. Myers's motion for judgment notwithstanding the verdict.

---

1. Hewitt also named as defendants the Bureau of Workers' Compensation to the extent of its subrogation rights and the Ohio attorney general because the complaint asserted a challenge to the constitutionality of R.C. 2721.12. They are not parties in this appeal.

{¶ 12} L.E. Myers appealed the court's denial of a directed verdict and judgment notwithstanding the verdict. The court of appeals affirmed. The court reasoned that the protective rubber gloves and sleeves were equipment safety guards within the meaning of R.C. 2745.01(C) and that the decision by Hewitt's supervisor to place Hewitt alone in an elevated bucket close to energized wires without requiring him to wear protective rubber gloves or sleeves amounted to the deliberate removal of an equipment safety guard. Thus, the appellate court concluded, this established a rebuttable presumption under R.C. 2745.01(C) of an intent to injure Hewitt, and L.E. Myers had presented no evidence to rebut the presumption.

{¶ 13} The cause is before this court upon the acceptance of a discretionary appeal. 131 Ohio St.3d 1456, 2012-Ohio-648, 961 N.E.2d 1135.

Analysis

{¶ 14} A cause of action for an employer intentional tort is governed by R.C. 2745.01, which provides:

(A) In an action brought against an employer by an employee * * * for damages resulting from an intentional tort committed by the employer during the course of employment, the employer shall not be liable unless the plaintiff proves that the employer committed the tortious act with the intent to injure another or with the belief that the injury was substantially certain to occur.

(B) As used in this section, "substantially certain" means that an employer acts with deliberate intent to cause an employee to suffer an injury, a disease, a condition, or death.

(C) Deliberate removal by an employer of an equipment safety guard or deliberate misrepresentation of a toxic or hazardous

substance creates a rebuttable presumption that the removal or misrepresentation was committed with intent to injure another if an injury or an occupational disease or condition occurs as a direct result.

**{¶ 15}** Today, we review the phrase "deliberate removal by an employer of an equipment safety guard" in R.C. 2745.01(C).[2] L.E. Myers argues that "an equipment safety guard" means a safety device attached to a machine that is intended to guard an employee from injury and that "deliberate removal" occurs when an employer makes a deliberate decision to eliminate that guard from the machine.

**{¶ 16}** When construing a statute, our primary goal is to ascertain and give effect to the intent of the General Assembly. *State v. Hairston,* 101 Ohio St.3d 308, 2004-Ohio-969, 804 N.E.2d 471, ¶ 11. We begin with the plain language and apply it as written in the statute. *State v. Chappell*, 127 Ohio St.3d 376, 2010-Ohio-5991, 939 N.E.2d 1234, ¶ 17. In doing so, we read words and phrases in context and according to the rules of grammar and common usage, and they must be given a technical or particular meaning if appropriate. R.C. 1.42.

A. Definition of "An Equipment Safety Guard"

**{¶ 17}** R.C. 2745.01(C) does not define these terms, so we look to the plain and ordinary meaning of the words. *Van Fossen v. Babcock & Wilcox Co.*, 36 Ohio St.3d 100, 103, 522 N.E.2d 489 (1988). The court of appeals used the following definitions:

---

2. The trial court ruled that Hewitt had presented insufficient evidence of a direct intent to injure necessary to recover under R.C. 2745.01(A) and (B), and the court limited the plaintiff's theory to the presumption of intent in R.C. 2745.01(C). The issue of direct intent is not before us.

> " 'Guard' is defined as 'a protective or safety device; *specif*: a device for protecting a machine part or the operator of a machine.' Merriam-Webster's Collegiate Dictionary [516 (10th Ed.1996)]. 'Safety' means 'the condition of being safe from undergoing or causing hurt, injury, or loss.' [*Id.* at 1027.] And 'equipment' is defined as 'the implements used in an operation or activity: APPARATUS.' [*Id.* at 392.]"

2011-Ohio-5413, ¶ 24, quoting *Fickle v. Conversion Technologies Internatl.*, *Inc.*, 6th Dist. No. WM-10-016, 2011-Ohio-2960, ¶ 38.

{¶ 18} The word "guard," a noun, is modified by the adjectives "equipment" and "safety." Reading the words in context and according to the rules of grammar as we must, R.C. 1.42, we determine that the phrase "an equipment safety guard" means a protective device on an implement or apparatus to make it safe and to prevent injury or loss.

{¶ 19} The Sixth District Court of Appeals so interpreted the phrase in *Fickle*, 2011-Ohio-2960, *modified, Beyer v. Rieter Automotive N. Am., Inc.,* 6th Dist. No. L-11-1110, 2012-Ohio-2807, 973 N.E.2d 318. In that case, the plaintiff's hand and arm were caught in a roller on an adhesive-coating machine. She alleged that her employer had failed to train her to use a jog switch that would stop the roller when not depressed and also had disconnected an emergency stop cable. The *Fickle* court concluded that these devices were not "equipment safety guards," because they did not prevent the plaintiff's hands from being exposed to the dangerous point of operation of the machinery she had been operating. *Id.* at ¶ 42. Thus, the court concluded that these facts did not demonstrate a "[d]eliberate removal by an employer of an equipment safety guard" to establish a presumption of intent under R.C. 2745.01(C).

**{¶ 20}** *Fickle* rejected the argument that "equipment safety guard" included " 'any device designed to prevent injury or to reduce the seriousness of injury.' " *Id.* at ¶ 39. "The General Assembly did not make the presumption applicable upon the deliberate removal of any safety-related device, but only of an equipment safety guard, and we may not add words to an unambiguous statute under the guise of interpretation." *Id*. at ¶ 42. Thus, *Fickle* defined "equipment safety guard" as a "device that is designed to shield the operator from exposure to or injury by a dangerous aspect of the equipment." *Id*. at ¶ 43.

**{¶ 21}** Other appellate districts in this state have similarly construed this phrase. *See Beary v. Larry Murphy Dump Truck Serv., Inc.*, 5th Dist. No. 2011-CA-00048, 2011-Ohio-4977, ¶ 21 ("equipment safety guard" commonly means a device designed to shield the operator of equipment from exposure to injury by a dangerous aspect of the equipment; a vehicle's backup alarm does not guard anything); *Barton v. G.E. Baker Constr.*, 9th Dist. No. 10CA009929, 2011-Ohio-5704 (a trench box to secure the sides of a trench from collapse is not "an equipment safety guard" because it is not a piece of equipment designed to protect an operator of equipment); *Roberts v. RMB Ents., Inc*., 197 Ohio App.3d 435, 2011-Ohio-6223, 967 N.E.2d 1263, ¶ 24 (12th Dist.) (a tire bead and bead taper, alleged safety features of a wheel-assembly unit, do not constitute "equipment safety guards," because they are not  devices designed to shield the operator from exposure to or injury by a dangerous aspect of the equipment).

**{¶ 22}** The court below did not agree that the "safety guard" must be attached to machinery. The court reasoned that that interpretation would limit recovery for injured employees who did not work with equipment. 2011-Ohio-5413, ¶ 20. Likewise, Hewitt advocates that the phrase should apply broadly to *any* safety-related item that may serve as a barrier between the employee and danger, citing *Beyer,* 2012-Ohio-2807, 973 N.E.2d 318, in support.

**{¶ 23}** In *Beyer*, the Sixth District Court of Appeals agreed with the Eighth District's expanded interpretation in *Hewitt* and concluded that even "personal protection equipment" such as a face mask at a manufacturing plant was "an equipment safety guard" because the masks were used to prevent the employee's exposure to toxic dust. *Beyer* modified *Fickle* and held that "equipment safety guard" as used in R.C. 2745.01(C) may also include free-standing equipment. *Id*. at ¶ 12–13.

**{¶ 24}** We do not agree. To construe "equipment safety guard" to include any generic safety-related item ignores not only the meaning of the words used but also the General Assembly's intent to restrict liability for intentional torts. As the Ninth District observed in *Barton v. G.E. Baker Constr.*, 2011-Ohio-5704, ¶ 11, "[f]rom these common dictionary definitions, it becomes apparent that not all workplace safety devices are 'equipment safety guards' as that term is used in Section 2745.01."

**{¶ 25}** A broad interpretation of the phrase does not comport with the General Assembly's efforts to restrict liability for intentional tort by authorizing recovery "*only* when an employer acts with specific intent." *Stetter v. R.J. Corman Derailment Servs., L.L.C.*, 125 Ohio St.3d 280, 2010-Ohio-1029, 927 N.E.2d 1092, ¶ 26; *Kaminski v. Metal & Wire Prods. Co.*, 125 Ohio St.3d 250, 2010-Ohio-1027, 927 N.E.2d 1066, ¶ 56. As we explained in *Kaminski*, the statutory restriction of intentional-tort liability "is supported by the history of employer intentional-tort litigation in Ohio and by a comparison of the current statute to previous statutory attempts." *Id.* at ¶ 57. It is not our role to second-guess the policy matters set by the General Assembly. *Stetter* at ¶ 35. Consequently, we refrain from expanding the scope of the rebuttable presumption of intent in R.C. 2745.01(C).

**{¶ 26}** Free-standing items that serve as physical barriers between the employee and potential exposure to injury, such as rubber gloves and sleeves, are

8

not "an equipment safety guard" for purposes of R.C. 2745.01(C). Instead, rubber gloves and sleeves are personal protective items that the employee controls. We adopt the definition in *Fickle* and hold that as used in R.C. 2745.01(C), "equipment safety guard" means "a device that is designed to shield the operator from exposure to or injury by a dangerous aspect of the equipment." *Fickle*, 2011-Ohio-2960, ¶ 43.

B. Definition of "Deliberate Removal"

**{¶ 27}** The court of appeals concluded that the employer's decision to place Hewitt close to energized wires without requiring him to wear protective rubber gloves or sleeves amounted to the deliberate removal of an equipment safety guard. We disagree.

**{¶ 28}** The court below defined the words as follows: "deliberate" means " 'characterized by or resulting from careful and thorough consideration—a deliberate decision,' " and "remove" means " 'to move by lifting, pushing aside, or taking away or off'; also 'to get rid of: ELIMINATE.' " 2011-Ohio-5413 at ¶ 24, quoting *Fickle* at ¶ 30–31.

**{¶ 29}** Thus, the "deliberate removal" referred to in R.C. 2745.01(C) may be described as a careful and thorough decision to get rid of or eliminate an equipment safety guard. Hewitt argues that "removal" is a broad term that encompasses more than just a physical removal. Although "removal" may encompass more than physically removing a guard from equipment and making it unavailable, such as bypassing or disabling the guard, an employer's failure to train or instruct an employee on a safety procedure does not constitute the deliberate removal of an equipment safety guard. *Fickle* at ¶ 45. *See also Wineberry v. N. Star Painting Co.*, 7th Dist. No. 11MA103, 2012-Ohio-4212, 978 N.E.2d 221 (employer's failure to place guardrails around a perch and scaffolding was not a deliberate removal when the guardrails were never in place).

**{¶ 30}** Consequently, we hold that the "deliberate removal" of an equipment safety guard occurs when an employer makes a deliberate decision to lift, push aside, take off, or otherwise eliminate that guard from the machine. Here, the employer's failure to instruct Hewitt to wear protective items such as rubber gloves and sleeves and requiring Hewitt to work alone in an elevated bucket do not amount to the deliberate removal of an equipment safety guard within the meaning of R.C. 2745.01(C) so as to create a rebuttable presumption of intent.

**{¶ 31}** Finally, Hewitt argues that the meaning of the terms in R.C. 2745.01(C) is a question for the trier of fact to determine. According to Hewitt, jurors could reasonably conclude that the protective rubber gloves and sleeves qualified under R.C. 2745.01(C) as "equipment safety guard[s]" that were "effectively eliminated" when Hewitt was told he did not have to wear them. Because the interpretation of undefined terms within a statute is a question of law for the court, we reject this argument. *Akron Centre Plaza, L.L.C. v. Summit Cty. Bd. of Revision*, 128 Ohio St.3d 145, 2010-Ohio-5035, 942 N.E.2d 1054.

Conclusion

**{¶ 32}** The protective rubber gloves and sleeves in this case do not, as a matter of law, constitute an equipment safety guard within the meaning of R.C. 2745.01(C). Consequently, we reverse the judgment of the court of appeals and order judgment in favor of appellant.

Judgment reversed.

O'DONNELL, LANZINGER, and CUPP, JJ., concur.

O'CONNOR, C.J., and MCGEE BROWN, J., concur in judgment only.

PFEIFER, J., dissents.

—————————

**PFEIFER, J., dissenting.**

{¶ 33} One of these days, a company is going to surprise me and act honorably and with compassion. They are going to acknowledge their complicity in the grievous injuries suffered by their employee, they are going to adequately compensate their employee for his or her injuries, and they are going to do so without resorting to every countervailing stratagem that their high-priced counsel can devise. Today is not that day. Even though L.E. Myers has implicitly acknowledged its complicity by firing every person involved in the incident that caused Larry Hewitt's injuries, even though L.E. Myers knows that, through its employees, it acted irresponsibly, L.E. Myers does not have to suffer the consequences; only its apprentice does.

I

{¶ 34} The majority opinion ultimately concludes that " 'an equipment safety guard' means a protective device on an implement or apparatus to make it safe and to prevent injury or loss." Majority opinion at ¶ 18. This is a plausible, though not the best, conclusion. For one thing, it reads words into the statute, something courts are not supposed to do. *See Columbus-Suburban Coach Lines, Inc. v. Pub. Util. Comm.*, 20 Ohio St.2d 125, 127, 254 N.E.2d 8 (1969), where we stated that this court has a duty "to give effect to the words used [in a statute], not to delete words used or to insert words not used."

{¶ 35} R.C. 2745.01(C) refers to "[d]eliberate removal by an employer of an equipment safety guard." The definition that the majority opinion has chosen to favor could have easily been written into the statute by changing three words: deliberate removal by an employer of *a* safety guard *attached to* equipment. That is the definition the majority opinion prefers, but it is not the statute that was enacted.

{¶ 36} Instead of adding words to the statute that the General Assembly could have easily added, instead of attempting to divine what the General

Assembly intended, the better course is to read the statute as enacted and consider "equipment safety guard" as a unitary term. Viewed in that light, "equipment safety guard" has a simple meaning: equipment that is used as a safety guard. There is no need to add words to the statute. There is no need to divine intent. There is only a conclusion that the majority opinion does not want to countenance.

{¶ 37} The General Assembly chose not to define "equipment safety guard." In my opinion, that is because they did not want an unduly restrictive meaning—one that they surely would have enacted had they chosen to. There are many "equipment safety guards" that absent the majority opinion's new constrictive interpretation would give rise to a rebuttable presumption of intent to injure. Remember, the presumption is rebuttable, whereas the absence of the presumption is often, as in this case, dispositive.

{¶ 38} One example of an "equipment safety guard" the removal of which should give rise to a presumption to injure is a kill switch. Most dangerous machines have them. Hitherto, most reasonable people would have thought that removing a kill switch would give rise to a rebuttable presumption of intent to injure. Not anymore. Employers are now free to remove kill switches without troubling over R.C. 2745.01(C). Helmets, facemasks, and visors are other examples of equipment used as a safety guard, the removal of which will no longer lead to a rebuttable presumption of intent to injure. Governors, which prevent certain machines from operating too quickly, may now be removed without concern that injuries that result will give rise to a rebuttable presumption pursuant to R.C. 2745.01(C). None of these equipment safety guards fit within the majority opinion's draconian interpretation of R.C. 2745.01(C). The scope of the majority opinion is staggering and dangerous for employees.

{¶ 39} The short-term consequences of affirming the court of appeals' decision would be de minimis. True, the employer would have to pay some

money to its injured apprentice. But this is an employer whose experienced supervisors told an apprentice that he shouldn't wear gloves and sleeves, equipment safety guards designed specifically to prevent the type of injury that occurred. Everyone involved with this case knows that the use of the equipment safety guards at issue would have prevented the apprentice's injuries.

{¶ 40} For the injured apprentice, the damages are a considerable amount of money, but for the employer, the sums involved are not significant. L.E. Myers's parent company, MYR Group, has a market capitalization of over $450 million and earned over $18 million in profits in 2011. The long-term consequences of reversing the court of appeals and imposing an unduly restrictive interpretation of "equipment safety guard" are potentially calamitous for Ohio's workers because companies will have less incentive to ensure that their employees operate as safely as possible.

## II

{¶ 41} Larry Hewitt sought recovery based on three grounds: that L.E. Myers acted with the specific intent to injure him, R.C. 2745.01(A); that L.E. Myers knew that its actions were substantially certain to injure him, R.C. 2745.01(A) and (B); and that L.E. Myers was presumed to have intended to injure him, R.C. 2745.01(C). The trial court indicated that it was going to limit the claim to the statutory presumption, though the court did not memorialize that conclusion in an entry. In the event, the court instructed the jury as to the "specific intent" and "substantially certain" grounds contained in R.C. 2745.01(A) and (B). Furthermore, the interrogatories addressed the concepts of substantially certain injury and conscious disregard for worker safety and did not address the statutory presumption. There is no reason to assume that the jury confined itself to consideration of the statutory presumption. To the contrary, there is ample reason to conclude that the jury considered the totality of R.C. 2745.01 in

reaching its conclusion. The majority opinion does not even mention the jury instructions or interrogatories.

{¶ 42} Even with the majority opinion's conclusion regarding R.C. 2745.01(C), the case should not be decided on the motion for a directed verdict. Instead, it should be returned to the court of appeals to consider whether the jury's conclusions with respect to R.C. 2745.01 (A) and (B) are sustainable.

{¶ 43} I dissent.

————————————

Plevin & Gallucci Co., L.P.A., Frank L. Gallucci III, and Michael D. Shroge; and Paul W. Flowers Co., L.P.A., and Paul W. Flowers, for appellee.

Tucker, Ellis & West, L.L.P., and Benjamin C. Sassé, for appellant.

The Mismas Law Firm, L.L.C., and John D. Mismas, urging affirmance for amicus curiae Ohio Association for Justice.

Reminger Co., L.P.A., and Brian D. Sullivan, urging reversal for amicus curiae Ohio Association of Civil Trial Attorneys.

Roetzel & Andress, Denise M. Hasbrook, and Emily Ciecka Wilcheck, urging reversal for amicus curiae FirstEnergy Corporation.

Garvin & Hickey, L.L.C., Preston J. Garvin, and Michael J. Hickey, urging reversal for amicus curiae Ohio Chamber of Commerce.

Bricker & Eckler, L.P.A., and Robert R. Sant, urging reversal for amicus curiae Ohio Chapter of the National Federation of Independent Business.

Licata & Toerek and Elizabeth A. Crosby, urging reversal for amicus curiae Council of Smaller Enterprises.

————————————