[Cite as *Thompson v. Oberlander's Tree & Landscape Ltd.*, 2016-Ohio-1147.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

BRET E. THOMPSON,

      PLAINTIFF-APPELLANT,

      -and-                          CASE NO. 9-15-44

OHIO BUREAU OF WORKERS
COMPENSATION,

      PLAINTIFF-APPELLEE,

      v.                            **O P I N I O N**

OBERLANDERS TREE &
LANDSCAPE, LTD., ET. AL.,

      DEFENDANTS-APPELLEES.

---

**Appeal from Marion County Common Pleas Court
Trial Court No. 13CV0401**

**Judgment Reversed and Cause Remanded**

**Date of Decision:    March 21, 2016**

---

APPEARANCES:

    *Jami S. Oliver* **for Appellant**

    *Bruce A. Curry* **for Defendants-Appellees**

**ROGERS, J.**

{¶1} Although originally placed on our accelerated calendar, we have elected, pursuant to Local Rule 12(5), to issue a full opinion in lieu of a judgment entry.

{¶2} Plaintiff-Appellant, Bret Thompson, appeals the judgment of the Court of Common Pleas of Marion County awarding Defendants-Appellees, Oberlander's Tree and Landscape LTD. ("the Company"), Roger Oberlander, and Randy Jackson (collectively "Appellees"), summary judgment.[1] For the reasons that follow, we reverse the judgment of the trial court granting summary judgment to the Company.

{¶3} The following facts are undisputed. On October 6, 2011, Thompson injured his left hand while using a chainsaw to cut a tree while working for the Company. The chainsaw Thompson was using did not have the required safety hand guard to protect the operator from "kickbacks." A "kickback" happens "when the tip of a chainsaw blade hits an obstruction, causing the blade to kick back or kick up in the air." Appellees' Brief, p. 5. When a chainsaw experiences a "kickback," the chainsaw's brake will be triggered once anything makes contact with the hand guard.

---

[1] We note that Thompson only appeals the trial court's judgment as it pertains to the Company. Thus, this opinion only addresses the award of summary judgment as to this entity and does not affect the trial court's decision to grant summary judgment to Jackson and Oberlander individually based on R.C. 4123.741.

{¶4} On June 26, 2013, Thompson filed a complaint in the Court of Common Pleas of Marion County against the Appellees alleging two claims: employer intentional tort and punitive damages.

{¶5} The Appellees filed an answer on July 31, 2013, denying the allegations alleged in the complaint.

{¶6} The Appellees' insurance company, United Ohio Insurance Company ("United"), filed a motion to intervene as a party plaintiff, which included its complaint against the Appellees. United's motion was granted by the trial court on November 13, 2013. The Appellees filed their answer to United's complaint on February 14, 2014.

{¶7} On March 26, 2014, the Appellees filed a motion to join the Ohio Bureau of Workers Compensation ("the Bureau") as a subrogated party because it was the real party in interest with respect to some of Thompson's claims. The motion was granted on July 21, 2014.

{¶8} On October 3, 2014, United filed a motion for summary judgment arguing that it did not owe the Appellees a duty to either defend or indemnify them in the case.

{¶9} The Bureau filed its intervening complaint against the Appellees on October 10, 2014. In its complaint, the Bureau argued that it was entitled to relief

in the amount of the benefits it had paid to Thompson. The Appellees filed an answer on October 27, 2014.

{¶10} The trial court granted United's motion for summary judgment on December 19, 2014.

{¶11} The Appellees filed a motion for summary judgment as to Thompson's complaint on July 15, 2015. In its motion, the Appellees argued that Thompson had failed to present any evidence as to how the Appellees intended to injure Thompson or how they deliberately removed a safety guard. In support of their motion, the Appellees attached affidavits of Jackson and Oberlander.

{¶12} Thompson filed his memorandum in opposition to the Appellees' motion on August 7, 2015. Thompson argued that the Appellees deliberately removed the hand guard, which constituted an equipment safety guard, by deliberately deciding not to repair or replace the hand guard on the chainsaw Thompson was using when he was injured. In support of his motion, Thompson attached affidavits of two former employees of the Company, Roger Bowman and Mark Saum, as well as the deposition transcripts of himself, Jackson, and Oberlander.

{¶13} On August 25, 2015, the Appellees filed their reply to Thompson's memorandum.

{¶14} The trial court granted the Appellees' motion for summary judgment on October 22, 2015. The court found that Thompson had failed to present any evidence to show that the Appellees deliberately removed the hand guard. Thus, it found that there were no genuine issues of material fact and the Appellees were entitled to judgment as a matter of law. The court filed an entry of dismissal the same day, dismissing Thompson's complaint.[2]

{¶15} Thompson filed this timely appeal, presenting the following assignment of error for our review.

### Assignment of Error

**THE TRIAL COURT ERRED IN FINDING, AS A MATTER OF LAW, THAT AN EMPLOYEE MUST PROVE THAT THE EMPLOYER "SPECIFICALLY INTENDED TO INJURE THE PLAINTIFF" PURSUANT TO R.C. 2745.01(A) WHERE PLAINTIFF-APPELLANT SUBMITS EVIDENCE UNDER SUBSECTION (C) FROM WHICH REASONABLE MINDS COULD FIND A "DELIBERATE REMOVAL OF A SAFETY GUARD" IN AN INTENTIONAL TORT CASE.**

{¶16} In his sole assignment of error, Thompson argues that the trial court erred by granting the Company's motion for summary judgment. We agree.

---

[2] We note that the trial court did not dismiss the Bureau's claims against the Appellees. Although this claim appears to remain pending, it does not affect the finality of the court's order. The Supreme Court of Ohio has found "that a judgment in an action which determines a claim in that action and has the effect of rendering moot all other claims in the action as to all other parties to the action is a final appealable order pursuant to R.C. 2505.02, and Civ.R. 54(B) is not applicable to such a judgment." *Wise v. Gursky*, 66 Ohio St.2d 241, 243 (1981). Because the trial court dismissed Thompson's claims, the Bureau's claim as a subrogated party was rendered moot by law. *See Renner v. E. Mfg. Corp.*, 11th Dist. Portage No. 2001-P-0135, 2002-Ohio-6691, ¶ 13, fn. 5.

{¶17} An appellate court reviews a summary judgment order de novo. *Hillyer v. State Farm Mut. Auto. Ins. Co.*, 131 Ohio App.3d 172, 175 (8th Dist.1999). However, a reviewing court will not reverse an otherwise correct judgment merely because the lower court utilized different or erroneous reasons as the basis for its determination. *Diamond Wine & Spirits, Inc. v. Dayton Heidelberg Distrib. Co., Inc.*, 148 Ohio App.3d 596, 2002-Ohio-3932, ¶ 25 (3d Dist.), citing *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 222 (1994). Summary judgment is appropriate when, looking at the evidence as a whole: (1) there is no genuine issue as to any material fact, and (2) the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). In conducting this analysis the court must determine "that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, [the nonmoving] party being entitled to have the evidence or stipulation construed most strongly in the [nonmoving] party's favor." *Id.* If any doubts exist, the issue must be resolved in favor of the nonmoving party. *Murphy v. City of Reynoldsburg*, 65 Ohio St.3d 356, 358-359 (1992).

{¶18} The party moving for summary judgment has the initial burden of producing some evidence which demonstrates the lack of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). In doing so, the

moving party is not required to produce any affirmative evidence, but must identify those portions of the record which affirmatively support his argument. *Id.* at 292. The nonmoving party must then rebut with specific facts showing the existence of a genuine triable issue; he may not rest on the mere allegations or denials of his pleadings. *Id.*; Civ.R. 56(E).

{¶19} R.C. 2745.01 is Ohio's employer intentional tort statute. It states, in relevant part:

> (A) In an action brought against an employer by an employee, * * * for damages resulting from an intentional tort committed by the employer during the course of employment, the employer shall not be liable unless the plaintiff proves that the employer committed the tortious act with the intent to injure another or with the belief that the injury was substantially certain to occur.
>
> (B) As used in this section, 'substantially certain' means that an employer acts with deliberate intent to cause an employee to suffer an injury, a disease, a condition, or death.
>
> (C) Deliberate removal by an employer of an equipment safety guard * * * creates a rebuttable presumption that the removal or misrepresentation was committed with intent to injure another if an injury * * * occurs as a direct result.

*Id.*

{¶20} Within the last few years, the Supreme Court of Ohio has defined both "equipment safety guard" and "deliberate removal." *See Hewitt v. L.E. Myers Co.*, 134 Ohio St.3d 199, 2012-Ohio-5317, ¶ 26, 30. The court first found that an "equipment safety guard" is " 'a device that is designed to shield the

-7-

operator from exposure to or injury by a dangerous aspect of the equipment.' " *Id.* at ¶ 26, quoting *Fickle v. Conversion Technologies Internatl., Inc.*, 6th Dist. Williams No. WM-10-016, 2011-Ohio-2960, ¶ 43.

**{¶21}** Next, the *Hewitt* court found that an employer deliberately removes a safety guard "when an employer makes a deliberate decision to lift, push aside, take off, or otherwise eliminate that guard from the machine." *Id.* at ¶ 30. In doing so, the court noted that "[a]lthough 'removal' may encompass more than physically removing a guard from equipment and making it unavailable, such as bypassing or disabling the guard, an employer's failure to train or instruct an employee on a safety procedure does not constitute the deliberate removal of an equipment safety guard." *Id.* at ¶ 29, citing *Fickle* at ¶ 45.

**{¶22}** To support its finding that "removal" constitutes more than the physical removing of a safety guard, the *Hewitt* court also cited the Seventh District's decision in *Wineberry v. N. Star Painting Co.*, 7th Dist. Mahoning No. 11 MA 103, 2012-Ohio-4212. In *Wineberry*, an employee was injured when he fell 15 feet from some scaffolding that had buckled. *Id.* at ¶ 4. While falling, the employee sandblasted his arm. *Id.* The employee argued that he would not have fallen had his employer installed guardrails on the scaffolding. *Id.* at ¶ 17. Further, he argued that the decision not to place guardrails on the scaffolding constituted a deliberate removal. *Id.* at ¶28. To an extent, the court agreed and

found "that deliberate removal not only encompasses removing safety equipment, but also *the failure to attach safety equipment provided by the manufacturer*." (Emphasis added.) *Id.* at ¶ 38. However, the court affirmed the trial court's judgment awarding summary judgment to the employer because the employee failed to present any evidence that the guardrails were either provided or required by the manufacturer. *Id.* at ¶ 39.

**{¶23}** Although *Wineberry* was decided two months prior to *Hewitt*, the *Hewitt* court did not find it inconsistent with its decision. Further, the logic behind *Wineberry* is inherent in the *Hewitt* court's definition of "deliberate removal," namely, "when an employer makes a deliberate decision to * * * otherwise eliminate that guard from the machine." *Hewitt*, 2012-Ohio-5317 at ¶ 30. Thus, *Wineberry* remains good law, although not binding on this court.

**{¶24}** After the court's decision in *Hewitt*, the Supreme Court of Ohio decided *Houdek v. ThyssenKrupp Materials N.A., Inc.*, 134 Ohio St.3d 491, 2012-Ohio-5685. In *Houdek*, the court found that in the absence of a deliberate removal of an equipment safety guard, an employee must establish that his employer acted with the specific intent to injure him. *Id.* at ¶ 25. "The *Houdek* court rejected the argument that the intent inquiry was an objective one satisfied by an employer's mere knowledge of a hazardous condition." *Broyles v. Kasper Machine Co.*, 517 Fed.Appx. 345, 353 (6th Cir.2013), citing *Houdek*.

**{¶25}** In this case, Thompson argues that an employer's deliberate decision not to replace or repair a safety guard, which comes installed from the manufacturer and that is required to be installed by law or regulation, amounts to the deliberate removal of an equipment safety guard pursuant to R.C. 2745.01(C). In response, the Company argues that an employer's knowledge of a hazardous condition is insufficient to make a finding that the employer deliberately removed an equipment safety guard.

**{¶26}** In support of its argument, the Company cites *Houdek* for the proposition that "[e]ven if an employer places an employee in a potentially dangerous situation, there must also be evidence that either management or the supervisor deliberately intended to injure the employee for R.C. 2745.01(C) to apply." Appellees' Brief, p. 11. Moreover, the Fifth District Court of Appeals has taken a similar standpoint on *Houdek*. *See Beary v. Larry Murphy Dump Truck Serv., Inc.*, 5th Dist. Stark No. 2013CA00240, 2014-Ohio-4333, ¶ 22, citing *Houdek*. However, after a close reading of *Houdek*, we find that the Company's and the Fifth District's interpretations are mistaken.

**{¶27}** In *Houdek*, the court addressed the issue of "whether a claimant bringing an employer intentional tort claim is required to prove that the employer acted with a deliberate intent to injure." 2012-Ohio-5685 at ¶ 13. Although R.C. 2745.01(A) seems to allow recovery for an employer intentional tort in two

scenarios (when the employer acts with the intent to injure OR with the belief that the injury was substantially certain to occur), the court found that 2745.01(B) limits an employee's ability to recover in only situations where the employer acts with the specific intent to injure. *Id.* at ¶ 23. The court wrote " 'the General Assembly's intent in enacting R.C. 2745.01, as expressed particularly in 2745.01(B), is to permit recovery for employer intentional torts only when an employer acts with *specific intent* to cause an injury, subject to subsections (C) and (D).' " (Emphasis sic.) *Id.*, quoting *Kaminski v. Metal & Wire Prods. Co.*, 125 Ohio St.3d 250, 2010-Ohio-1027, ¶ 56.

{¶28} The court applied its finding to the facts in that case and found that the employee had failed to present any evidence that the employer specifically intended to injure him. *Id.* at ¶ 26.

{¶29} The *Houdek* court's only analysis of R.C. 2745.01(C) is contained in one paragraph. The court found that adequate lighting conditions and safety devices such as orange cones, reflective vests, and retractable gates were not equipment safety guards and stated that there was no evidence that the employer deliberately removed them. *Id.* at ¶ 27.

{¶30} Thus, *Houdek* does not support the statement that R.C. 2745.01(C) requires that the employer possessed a deliberate intent to injure to be applicable. "Under R.C. 2745.01(C), the predicate facts – an employer's deliberate removal of

-11-

an equipment safety guard and directly resulting injury – give rise to a prima facie finding of intent to injure." *Hoyle v. DTJ Ents., Inc.*, 143 Ohio St. 3d 197, 2015-Ohio-843, ¶ 23. If we were to adopt the Company's logic, then the standard to establish the rebuttable presumption would be the same as the standard in R.C. 2745.01(A), therefore eliminating the need for any presumption. "It would be quite anomalous to interpret R.C. 2745.01(C) as requiring proof that the employer acted with the intent to injure in order [to] create a presumption that the employer acted with the intent to injure. Such an interpretation would render division (C) a nullity." *Fickle*, 2011-Ohio-2960 at ¶ 32, fn. 2. Rather, as the unambiguous language of the statute states, R.C. 2745.01(C) serves as a rebuttable presumption that the intent to injure, required under R.C. 2745.01(A), has been proven by the employee.

{¶31} Next, we turn our attention to whether Thompson's argument withstands scrutiny. Neither party disputes whether the hand guard is an equipment safety guard, as the hand guard is " 'a device that is designed to shield the operator from exposure to or injury by a dangerous aspect of the equipment.' " *Hewitt*, 2012-Ohio-5317 at ¶ 26, quoting *Fickle* at ¶ 43. If a kickback occurs, causing the operator to lose control of the chainsaw, the hand guard triggers the saw's brake when contacted. This act prevents the operator from being cut by the

saw. Thus, the question becomes whether the deliberate decision not to replace or repair a required safety guard constitutes the deliberate removal of said guard.

**{¶32}** To answer this question, we look to the Seventh District's opinion in *Wineberry* for guidance. The *Wineberry* court addressed a very similar question to the one asked here, which was whether the failure to replace safety guardrails on scaffolding perches constituted the deliberate removal of a safety guard. The court answered in the affirmative, finding "that deliberate removal not only encompasses removing safety equipment, but also the failure to attach safety equipment provided by the manufacturer." 2012-Ohio-4212 at ¶ 38. The court reasoned, "If a machine is shipped not fully assembled and the employer does not install the guard that comes with the machine, under a narrow construction it might not be considered deliberate removal since the guard was not initially attached." *Id.* Therefore, the court found that a broader interpretation of the term "remove" was required. This definition was not without its limits though, as the court required that to have deliberate removal the safety guard must be required to be in place by the manufacturer or by law/regulation. *See id.* at ¶ 39-40. The court found that the guardrails were not provided by the manufacturer nor were they required by any law or regulation. *Id.* at ¶ 39.

**{¶33}** As noted supra, *Wineberry* was decided before the Supreme Court of Ohio defined "deliberate removal" in *Hewitt*. Whereas the court in *Hewitt* found

that a broad definition of the term "equipment safety guard" was not compatible with the General Assembly's intent as laid out in the statute, the court did not make a similar finding as to "deliberate removal." *See Hewitt* at ¶ 25, 29. Rather, the court wrote that " 'removal' may encompass more than physically removing a guard from equipment and making it unavailable, such as bypassing or disabling the guard * * *." *Id.* at ¶ 29. Hence, the court's final definition that includes "otherwise eliminate [the] guard * * *" is broad and could encompass several different actions. *Id.* at ¶ 30.

{¶34} Given the Supreme Court of Ohio's broad definition of "deliberate removal" and the similarities in *Wineberry*, we find that an employer deliberately removes an equipment safety guard when it makes a deliberate decision not to either repair or replace an equipment safety guard that is provided by the manufacturer and/or required by law or regulation to be on the equipment. This type of conduct goes beyond the realm of negligence or recklessness because the employer's careful and considered decision not to replace or repair a broken or missing guard is essentially "eliminat[ing the] guard." *Id.* There could be several reasons why an employer may wish not to replace or repair a guard, be it financial (does not want to pay to have the guard fixed or replaced), business-related (slows down production), or several other reasons.

{¶35} The Company cites numerous cases to support its proposition that an omission may constitute negligence or recklessness, but is insufficient to prove deliberate intent to injure. *See generally Houdek*, 2012-Ohio-5685; *Meadows v. Air Craft Wheels, L.L.C.*, 8th Dist. Cuyahoga No. 96782, 2012-Ohio-269; *Hubble v. Haviland Plastic Prods., Co.*, 3d Dist. Paulding No. 11-10-07, 2010-Ohio-6379. The problem with the Company's argument is that these cases state that negligence or recklessness is not sufficient to support a finding of deliberate intent to injure under R.C. 2745.01(A), not R.C. 2745.01(C). Again, R.C. 2745.01(C) provides an avenue for a plaintiff to raise a rebuttable presumption of the employer's intent to injure. It is not held to the same standard as subsection (A). Moreover, most of the Company's cases do not analyze R.C. 2745.01(C). Rather they focus on the deliberate intent to injure under R.C. 2745.01(A).

{¶36} Next, we look to the facts as provided in the record to determine if a genuine issue of material fact exists as to whether Thompson established the rebuttable presumption under R.C. 2745.01(C). We answer in the affirmative.

{¶37} First, the hand guard at issue was provided by the manufacturer and required to be on the chainsaw by both state and federal regulations. The saw used in this case was a Stihl 066. Portions of the saw's owner's manual were included as three exhibits to Jackson's deposition. Specifically, the manual states "Warning! Never operate your chainsaw without a front hand guard." Jackson

Depo., Ex. 5. The manual is also clear that the brake will not function if there is no hand guard. Further, the Company conceded that the hand guard is required by the manufacturer and all the industry standards. Both Oberlander and Jackson also stated that using a chainsaw without a hand guard is extremely dangerous and can cause serious injury to the operator.

{¶38} Not only is the hand guard required to be on the saw by the industry standards and the manufacturer, but it is also required by Ohio regulations. O.A.C. 4123:1-5-07(C) requires that "All hand tools and hand-held portable powered tools and other hand-held equipment whether furnished by the employee or the employer shall be maintained in a safe condition, free of worn or defective parts." Moreover, the regulations require that "All portable power-driven saws with blades more than two inches in diameter shall be equipped with guards above and below the base plate shoe." O.A.C. 4123:1-5-07(D)(1). Chainsaws, specifically, "shall have all guards and handles, provided by the manufacturer, in place, all controls functioning properly and mufflers operative." O.A.C. 4123:1-5-07(D)(2)(a).

{¶39} Finally, federal regulations require that all chainsaws have a front hand guard in place. 29 C.F.R. 1910.266(e)(2)(i). Specifically, "Each chain saw * * * *shall* be equipped with a chain brake * * *. Each chain saw * * * *shall* be equipped with a protective device that minimizes chain-saw kickback. No chain-

saw kickback device *shall* be removed or otherwise disabled." (Emphasis added). *Id.* Thus, it is very clear from the record that Thompson established that the hand guard was required to be fully functional and on the chainsaw.

{¶40} Second, the Company was aware that the chainsaw that injured Thompson was lacking a hand guard before Thompson was injured. Thompson testified in his deposition that he told management, specifically Oberlander and Jackson, on at least two separate occasions that the hand guard was either broken or missing and needed repaired or replaced. Additionally, Thompson produced the affidavits of Saum and Bowman who testified that they both had complained to management about saws with broken or missing hand guards. Bowman specifically remembers Thompson telling management about the saw missing the hand guard.

{¶41} Third, when viewed in a light most favorable to Thompson, Thompson provided evidence that the Company made a deliberate decision not to repair or replace the hand guard. In their affidavits, both Bowman and Saum stated that employees were told to either use the saws that were provided by the Company or they would get fired. Thompson testified that the saw was missing the hand guard from the first day he started working for the Company. More evidence that the Company made a deliberate decision not to replace or repair the hand guard comes from the fact that the same saw that injured Thompson was sent

in for repairs prior to him being injured. Specifically, a new chain was put on the saw. Thompson testified that the hand guard was missing when the saw was sent to the shop and was not returned with a repaired or new one attached.

**{¶42}** Therefore, we find that Thompson has presented sufficient evidence to establish the presumption of intent to injure under R.C. 2745.01(C).

**{¶43}** The question then becomes whether the Company presented sufficient evidence to rebut the presumption. The only evidence that the Company produced were the affidavits of Jackson and Oberlander. In the affidavits, both deny any intent to injure Thompson. However, "self-congratulatory affidavits," where the defendants deny any intent to injure, standing alone are not sufficient to rebut the presumption in R.C. 2745.01(C). *See Downard v. Rumpke of Ohio, Inc.*, 12th Dist. Butler No. CA2012-11-218, 2013-Ohio-4760, ¶ 60, citing *Rudisill v. Ford Motor Co.*, 709 F.3d 595, 605 (6th Cir.2013); *Dudley v. Powers & Sons, L.L.C.*, 6th Dist. Williams No. WM-10-015, 2011-Ohio-1975, ¶ 21 ("The testimony of a Powers employee cannot be weighed so heavily to say that reasonable minds could not disagree on the issue of intent."). Thus, the Company has failed to rebut the presumption and is not entitled to judgment as a matter of law.

**{¶44}** Accordingly, we sustain Thompson's sole assignment of error.

**{¶45}** Having found error prejudicial to the appellant, in the particulars assigned and argued, we reverse the judgment of trial court as to the claim against the Company and remand the matter for further proceedings consistent with this opinion.

*Judgment Reversed and*
*Cause Remanded*

**SHAW, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**