[Cite as *Fahncke v. Fahncke*, 2020-Ohio-433.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## AUGLAIZE COUNTY

KEITH A. FAHNCKE,

    PLAINTIFF-APPELLANT/
    CROSS-APPELLEE,               CASE NO.  2-19-05

    v.

LARRY R. FAHNCKE, ET AL.,

    DEFENDANTS-APPELLEES/
    CROSS-APPELLANTS,
    -and-                       O P I N I O N

HI CROP ACHERS, LLC, ET AL.,

    THIRD PARTY DEFENDANTS-APPELLANTS/
    CROSS-APPELLEES.

**Appeal from Auglaize County Common Pleas Court**
**Trial Court No. 2018 CV 0123**

**Judgment Reversed and Cause Remanded**

**Date of Decision:   February 10, 2020**

APPEARANCES:

    *Lee R. Schroeder* for Appellants/Cross-Appellees

    *Taryn A. Douglas* for Appellees/Cross-Appellants

Case No. 2-19-05

**ZIMMERMAN, J.**

{¶1} Plaintiff-appellant, Keith A. Fahncke ("Keith"), appeals the May 29, 2019 judgment entry of the Auglaize County Court of Common Pleas dismissing his complaint against defendant-appellees, Larry R. Fahncke ("Larry"), Robert J. Fahncke ("Robert"), Ronald E. Fahncke ("Ronald"), Lisa M. Merkle ("Lisa M."), Kathy K. Poppe ("Kathy") aka Kathy K. Williams, Amy S. Schlenker ("Amy") (collectively, "Keith's siblings"), Lisa A. Fahncke ("Lisa F."), Janye A. Fahncke ("Jayne"), Therese M. Fahncke ("Theresa"), Steven R. Merkle ("Steven"), Scot A. Poppe ("Scot"), David P. Schlenker ("David") (collectively, "defendants"). For the reasons that follow, we reverse.

{¶2} This case stems from the estate plan of Richard C. Fahncke ("Richard") and Rosalyn M. Fahncke ("Rosalyn") (collectively, the "parents") who deeded four separate parcels of land containing 247 acres located in Auglaize County, (collectively, the "Fahncke-family farm"), to their seven children Keith, Larry, Robert, Ronald, Lisa M., Kathy, and Amy (collectively, the "Fahncke children") as tenants-in-common.[1] (Doc. No. 1, Exs. A, B, C); (Doc. No. 22, Ex. 2). Richard died on May 25, 2014, and Rosalyn died on March 15, 2018.[2] Rosalyn's interest in

---

[1] The parents' transfer of their possessory interest in the Fahncke-family farm to the Fahncke children as tenants-in-common created a unilateral-option contract binding Keith's siblings without actually binding Keith. *See Natl. City Bank v. Welch*, 10th Dist. Franklin No. 2010-Ohio-2981, ¶ 13, (distinguishing between a "right of first refusal" and "purchase option"). *See also Plikerd v. Mongeluzzo*, 73 Ohio App.3d 115, 122-124 (3d Dist.1992).

[2] The affidavit terminating the life estate of the parents on their deaths was recorded on August 17, 2018 in Auglaize County Official Record Volume 691 pages 2036 through 2042. (Doc. No. 26).

the farm (terminated upon her death) and vested the Fahncke children as tenants-in-common of the Fahncke-family farm.[3]

{¶3} At the core of this appeal is a written agreement between the parents and the Fahncke children dated September 27, 2003 wherein Keith was given an option to purchase the Fahncke-family farm which triggered after the parents' death. (Doc. No. 47). Such agreement, in its pertinent part provided as follows:

> That at the death of the survivor of Richard C. Fahncke and of Rosalyn M. Fahncke, KEITH A. FAHNCKE shall have the right to purchase all of the real property subject to this agreement for an amount equal to the fair market value of said real property determined at the time of the death of the survivor of Richard C. Fahncke and of Rosalyn M. Fahncke by an independent appraiser hired by the remaining parties hereto. The appraiser shall appraise the real property at its agricultural use value unless said appraiser has knowledge that KEITH A. FAHNCKE will not use said real property for farming, in which case, the fair market value of the real property shall apply. For purpose of determining the purchase price of said real property, the appraised [sic] value of the real property shall first be reduced by twenty percent (20%) and the remaining balance shall be reduced further by one-seventh (1/7). The remaining number shall be the purchase price of said real estate and shall be binding on all parties herein.

(*Id.*).

{¶4} Pertinent to this appeal, Keith and his siblings disagreed as to the valuation of the Fahncke-family farm after Rosalyn died. Based on that disagreement, Keith did not exercise his purchase option, which expired on

---

[3] Keith and Diane L. Fahncke ("Diane") transferred their interest in the Fahncke-family farm to High Crop Achers LLC by quit-claim deed on February 1, 2018; which was recorded in the Auglaize County Official Record Volume 687 pages 630 through 639 on April 12, 2018. (Doc. No. 22).

September 21, 2018. Instead, Keith filed a complaint in the trial court against the defendants seeking a declaratory judgment, with further claims for breach of contract, anticipatory repudiation, and unjust enrichment. (Doc. No. 1). On October 22, 2018, the defendants filed their answer and counterclaims for declaratory judgment and partition. (Doc. No. 22).

{¶5} All parties filed summary judgment requests, and on May 29, 2018, the trial court granted the defendants' motion for summary judgment and denied Keith, HAC, and Diane's motion for summary judgment. (Doc. Nos. 26, 42, 47, 63). However, in its decision, the trial court granted Keith 30 days to exercise his option to purchase the Fahncke-family farm. (*Id.*). (*See also* Doc. No. 66).

{¶6} Keith, HAC, and Diane filed a notice of appeal on June 28, 2019. (Doc. No. 67). They raise six assignments of error for our review, which we will address together. The defendants filed a cross-appeal on July 8, 2019, and raise one assignment of error. (Doc. No. 77).

{¶7} We will address Keith, HAC, and Diane's assignments of error, first followed by the defendants' cross assignment of error.

**Keith, HAC, and Diane's Assignment of Error No. I**

**The Trial Court Erred In Denying The Appellants' Motion For Summary Judgment And Granting The Appellees' Motion For Summary Judgment Because Reasonable Minds Cannot Come**

**To One Conclusion Entitled The Appellees' To Judgement As A Matter Of Law.**

**Keith, HAC, and Diane's Assignment of Error No. II**

**The Trial Court Erred In Denying The Appellants' Motion For Summary Judgment And Granting The Appellees' Motion For Summary Judgment Because The Trial Court Failed To Apply The Special Meaning Of The Geographic Location And The Industry To Correctly Construe The Terms Of The Contract.**

**Keith, HAC, and Diane's Assignment of Error No. III**

**The Trial Court Erred In Denying The Appellants' Motion For Summary Judgment And Granting The Appellees' Motion For Summary Judgment Because The Trial Court Failed To Give All Of The Provisions Of The Agreement Weight And Meaning During The Construction Of The Agreement.**

**Keith, HAC, and Diane's Assignment of Error No. IV**

**The Trial Court Erred In Denying The Appellants' Motion For Summary Judgment And Granting The Appellees' Motion For Summary Judgment Because The Trial Court Failed To Give Any Weight To Evidence Demonstrating That A Scriveners' Error Existed And Affected The Meaning Of The Agreement.**

**Keith, HAC, and Diane's Assignment of Error No. V**

**The Trial Court Erred In Denying The Appellants' Motion For Summary Judgment And Granting The Appellees' Motion For Summary Judgment Because The Trial Court Determined That "Agricultural Use Value" And "Fair Market Value" Had The Same Meaning.**

**Keith, HAC, and Diane's Assignment of Error No. VI**

**The Trial Court Erred In Denying The Appellants' Motion For Summary Judgment And Granting The Appellees' Motion For Summary Judgment Because The Trial Court Relied Upon**

**Extrinsic Evidence Of An Unrelated Real Estate Purchase To Determine What Appellant Should Pay In The Instant Case.**

**{¶8}** Before we review the merits of this case, we must address a threshold jurisdictional question. Although the parties did not raise the issue of whether the trial court's judgment entry is reviewable by this court as a final, appealable order, this is a jurisdictional question which we must raise sua sponte. *In re Murray*, 52 Ohio St.3d 155, 159-160 (1990), fn. 2. *Whitaker-Merrell Co. v. Geupel Constr. Co.*, 29 Ohio St.2d 184, 186 (1972).

**{¶9}** We have appellate jurisdiction over "final appealable orders." Ohio Constitution, Article IV, Section 3(B)(2). *See Grieshop v. Hoyng*, 3d Dist. Mercer No. 10-06-27, 2007-Ohio-2861, ¶ 15. If an order is not final and appealable, the appellate court lacks jurisdiction and the appeal must be dismissed. *Dunham v. Ervin*, 10th Dist. Franklin No. 17AP-79, 2017-Ohio-7616, ¶ 10, citing *Prod. Credit Assn. v. Hedges*, 87 Ohio App.3d 207, 210 (4th Dist.1993), fn. 2. *See Gen. Acc. Ins. Co. v. Ins. Co. of N. Am.*, 44 Ohio St.3d 17, 20 (1989). "'An order of a court is a final appealable order only if the requirements of both R.C. 2505.02 and, if applicable, Civ.R. 54(B), are met.'" *CitiMortgage, Inc. v. Roznowski*, 139 Ohio St.3d 299, 2014-Ohio-1984, ¶ 10, quoting *State ex rel. Scruggs v. Sadler*, 97 Ohio St.3d 78, 2002-Ohio-5315, ¶ 5.

> When determining whether a judgment or order is final and appealable, an appellate court engages in a two-step analysis. First, the court must determine if the order is final within the requirements

of R.C. 2505.02. Second, if the order satisfies R.C. 2505.02, the court must determine whether Civ.R. 54(B) applies and, if so, whether the order contains a certification that there is no just reason for delay.

*Nnadi v. Nnadi*, 10th Dist. Franklin No. 15AP-13, 2015-Ohio-3981, ¶ 12, citing

*Gen. Acc. Ins. Co.* at 21. R.C. 2505.02 defines a final order as follows:

(B) An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following:

(1) An order that affects a substantial right in an action that in effect determines the action and prevents a judgment;

(2) An order that affects a substantial right made in a special proceeding or upon a summary application in an action after judgment;

(3) An order that vacates or sets aside a judgment or grants a new trial;

(4) An order that grants or denies a provisional remedy and to which both of the following apply:

(a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy.

(b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action.

(5) An order that determines that an action may or may not be maintained as a class action;

(6) An order determining the constitutionality of any changes to the Revised Code made by Am.Sub.S.B. 281 of the 124th general assembly * * *;

(7)   An order in an appropriation proceeding that may be appealed pursuant to division (B)(3) of section 163.09 of the Revised Code.

R.C. 2505.02(B).

{¶10} "Civ.R. 54(B) provides that '[w]hen more than one claim for relief is presented in an action * * * or when multiple parties are involved, the court may enter final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is *no just reason for delay*.'" (Emphasis added.)  *Nnadi* at ¶ 14, quoting Civ.R. 54(B), and citing *Chef Italiano Corp. v. Kent State Univ.*, 44 Ohio St.3d 86 (1989), syllabus and *State ex rel. Scruggs* at ¶ 5-7.  "Civ.R. 54(B), however, is merely a procedural device.  It cannot affect the finality of an order." *Gen. Acc. Ins. Co.* at 21.

> "Civ.R. 54(B) cannot abridge, enlarge, or modify any substantive right. * * * It permits both the separation of claims for purposes of appeal and the early appeal of such claims, within the discretion of the trial court, but it does not affect either the substantive right to appeal or the merits of the claims. * * *"

*Id.*, quoting *Alexander v. Buckeye Pipe Line Co.*, 49 Ohio St.2d 158, 159 (1977).  "'Civ.R. 54(B) does not alter the requirement that an order must be final before it is appealable. * * *'" *Id.*, quoting *Douthitt v. Garrison*, 3 Ohio App.3d 254, 255 (9th Dist.1981).

{¶11} Ordinarily, in a multi-party or multi-claim case, when a trial court's judgment entry affects a substantial right of some but not all parties or determines some but not all claims pending before the trial court, the absence of a Civ.R. 54(B)

certification bars an appellate court from entertaining an appeal of the judgment. *See Santomieri v. Mangen*, 3d Dist. Auglaize No. 2-17-05, 2018-Ohio-1443, ¶ 7. However, there are instances where the Supreme Court of Ohio has concluded "that a judgment in an action which determines a claim in that action and has the effect of rendering moot all other claims in the action as to all other parties to the action is a final appealable order pursuant to R.C. 2505.02, and Civ.R. 54(B) is not applicable to such a judgment." *Wise v. Gursky*, 66 Ohio St.2d 241, 243 (1981).

{¶12} In the case before us, the trial court did not dismiss the defendants' third-party complaint against HAC and Diane. (*See* Doc. No. 63). However, even though the third-party complaint remains pending, it does not impact the finality of the trial court's order. *See Mangen* at ¶ 7. Because the trial court granted the defendants' declaratory-judgment and partition claims and dismissed Keith's claims for declaratory judgment, breach of contract, anticipatory repudiation, and unjust enrichment, HCA and Diane's third party complaint for declaratory judgment and partition were implicitly rejected and rendered moot. *Id.* at ¶ 8-9, citing *Wise* at 243. *See also Thompson v. Oberlander's Tree & Landscaping Ltd.*, 3d Dist. Marion No. 9-15-44, 2016-Ohio-1147, ¶ 14, fn. 2, citing *Wise* at 243. *See Stine v. Northwest Ohio Realty Co.*, 3d Dist. Logan No. 8-86-24, 1989 WL 29214, *6 (Mar. 16, 1989), citing *Wise* at 243. Thus, we conclude that we have jurisdiction to address the issues presented.

{¶13} Having concluded that we have jurisdiction to review this case, we now turn to Keith, HAC, and Diane's assignments of error in which they argue that the trial court erred by granting summary judgment in favor of the defendants after incorrectly interpreting the terms of the agreement.

*Standard of Review*

{¶14} We review a decision to grant summary judgment de novo. *Doe v. Shaffer*, 90 Ohio St.3d 388, 390 (2000). "De novo review is independent and without deference to the trial court's determination." *ISHA, Inc. v. Risser*, 3d Dist. Allen No. 1-12-47, 2013-Ohio-2149, ¶ 25, citing *Costner Consulting Co. v. U.S. Bancorp*, 195 Ohio App.3d 477, 2011-Ohio-3822, ¶ 10 (10th Dist.). Summary judgment is proper where there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can reach but one conclusion when viewing the evidence in favor of the non-moving party, and the conclusion is adverse to the non-moving party. Civ.R. 56(C); *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 219 (1994), citing *Davis v. Loopco Industries, Inc.*, 66 Ohio St.3d 64, 65-66 (1993) and *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

*Analysis*

{¶15} In this case, the trial court issued an entry interpreting the terms of the agreement through a declaratory judgment. An appellate court reviews a trial

court's determination "concerning the appropriateness of the case for declaratory judgment" under an abuse-of-discretion standard. *Arnott v. Arnott*, 132 Ohio St.3d 401, 2012-Ohio-3208, ¶ 1. After the trial court determines that a complaint for declaratory judgment presents a justiciable question, an appellate court reviews de novo purely legal issues. *Id.* at ¶ 17.

{¶16} "'A declaratory judgment action provides a means by which parties can eliminate uncertainty regarding their legal rights and obligations.'" *Mid-Am. Fire and Cas. Co. v. Heasley*, 113 Ohio St.3d 133, 2007-Ohio-1248, ¶ 8, quoting *Travelers Indemn. Co. v. Cochrane*, 155 Ohio St. 305, 312 (1951). *See also* R.C. 2721.03. "The purpose of a declaratory judgment action is to dispose of 'uncertain or disputed obligations quickly and conclusively,' and to achieve that end, the declaratory judgment statutes are to be construed 'liberally.'" *Mid-Am.* at ¶ 8, quoting *Ohio Farmers Inemn. Co. v. Chames*, 170 Ohio St.3d 209, 213 (1959). However, "the declaratory judgment statutes are not without limitation," and a declaratory judgment should be used "only to decide 'an actual controversy, the resolution of which will confer certain rights or status upon the litigants.'" *Id.*, quoting *Corron v. Corron*, 40 Ohio St.3d 75, 79 (1980).

{¶17} Here, Keith, HAC, Diane, and the defendants are unable to agree on the Fahncke-family farm's valuation under the terms of the agreement. Specifically,

the parties disagree as to the meaning of the "agricultural use value" language contained in the agreement.

{¶18} We now turn to the terms of the agreement to determine if the language of the agreement is ambiguous. "The construction of written contracts and instruments, including deeds, is a matter of law." *Long Beach Assn., Inc. v. Jones*, 82 Ohio St.3d 574, 576 (1998), citing *Inland Refuse Transfer Co. v. Browning–Ferris Industries of Ohio, Inc.*, 15 Ohio St.3d 321, 322 (1984). We review questions of law de novo. *Id.*, citing *Ohio Bell Tel. Co. v. Pub. Util. Comm.*, 64 Ohio St.3d 145, 147 (1992). "'When interpreting a contract, we will presume that words are used for a specific purpose and will avoid interpretations that render portions meaningless or unnecessary.'" *Beverage Holdings, L.L.C. v. 5701 Lombardo*, ___ Ohio St.3d ___, 2019-Ohio-4716, ¶ 33 (Kennedy, J. dissenting), quoting *Wohl v. Swinney*, 118 Ohio St.3D 277, 2008-Ohio-2334, ¶ 22.

{¶19} The relevant term of the agreement subject to dispute reads as follows:

That at the death of the survivor of Richard C. Fahncke and of Rosalyn M. Fahncke, KEITH A. FAHNCKE shall have the right to purchase all of the real property subject to this agreement for an amount equal to the *fair market value* of said real property determined at the time of the death of the survivor of Richard C. Fahncke and of Rosalyn M. Fahncke by an independent appraiser hired by the remaining parties hereto. The appraiser shall appraise the real property at its *agricultural use value* unless said appraiser has knowledge that KEITH A. FAHNCKE will not use said real property for farming, in which case, the *fair market value* of the real property shall apply. For purpose of determining the purchase price of said real property, the appraised [sic] value of the real property shall first be reduced by

-12-

twenty percent (20%) and the remaining balance shall be reduced further by one-seventh (1/7). The remaining number shall be the purchase price of said real estate and shall be binding on all parties herein.

(Emphasis added.) (Doc. No. 47).

{¶20} The parties do not dispute that the agreement is unambiguous; rather, Keith, HAC, and Diane contend that the trial court erred in its interpretation of the valuation language in the terms of the agreement. Specifically, they argue that the trial court erred by concluding that the Fahncke-family farm should be valued at its fair-market value at current-market value and not at its agricultural-use value or CAUV.[4] The trial court in reaching its conclusion (valuing the land at its fair-market value instead of its agricultural-use value) reasoned that the absence of the word *current* in conjunction with agricultural-use value in the agreement was dispositive. We disagree.

{¶21} "Typically, real property is valued by the county auditor at its 'true value in money.'" *Johnson v. Clark Cty. Bd. of Revision*, 155 Ohio St.3d 264, 2018-Ohio-4390, ¶ 10, citing R.C. 5713.01(B). "True value in money" "refers to 'the amount for which that property would sell on the open market by a willing seller to a willing buyer * * *, i.e., the sales price.'" *Id.*, citing *Terraza 8, L.L.C. v.*

---

[4] Keith, HAC, and Diane contend that the term "agricultural use value" defines fair-market value as "taxable value" and not "true value in money." *See* Ohio Adm. Code 5703-25-05 (2003) (current version at Ohio Adm.Code 5703-25-05 (2019)), (defining the terms "'true value in money or true value'" and "'taxable value'" under R.C. Chapter 5713; 26 U.S.C. 2032 (titled "Alternative valuation").

*Franklin Cty. Bd. of Revision*, 150 Ohio St.3d 527, 2017-Ohio-4415, ¶ 9, quoting *State ex rel. Park Invest. Cty. v. Bd. of Tax Appeals*, 175 Ohio St. 410, 412 (1964). The property's "true value in money" equates to what the property would sell for in the current market without regard to use of the land. *See* R.C. 5713.01; 5713.03; 5713.31. However, when land is devoted exclusively to agricultural use, the owner of the land can request that the county auditor value the property in accordance with its current-agricultural use rather than its current-market value. *Johnson* at ¶ 11, citing *Maralgate, L.L.C. v. Greene Cty. Bd. of Revision*, 130 Ohio St.3d 316, 2011-Ohio-5448, ¶ 13-14 and *Adams v. Testa*, 152 Ohio St.3d 207, 2017-Ohio-8853, ¶ 6, citing R.C. 5713.30. Current-agricultural-use valuation ("CAUV") is used by county auditors to value farmland for tax purposes. *See Adams v. Testa, Tax Commr.* 152 Ohio St.3d 217, 2017-Ohio-8854, ¶ 4, citing R.C. 5715.01(A). This procedure "'usually results in a lower valuation and a lower real property tax' because the county auditor is permitted to 'disregard the highest and best use of the property according to its current agricultural use.'" *Fife v. Green Cty. Bd. of Revision*, 120 Ohio St.3d 442, 2008-Ohio-6786, ¶ 4, quoting *Renner v. Tuscarawas Cty. Bd. of Revision*, 59 Ohio St.3d 142 (1991).

{¶22} CAUV is based upon soil types. *See* Ohio Adm.Code 5703-25-33 (2003) (current version at Ohio Adm.Code 5703-25-33 (2019)). The Ohio Department of Taxation sets CAUV annually for all Ohio's soil types. *Id.* In order

to qualify for a CAUV, a farmer must meet the statutory requirements and apply for the valuation with the county auditor. *See* R.C. 5713.31. There is no dispute that the Fahncke-family farm met the statutory requirements at the time the parents executed the agreement. (Appellant's Brief at 14).

{¶23} In our review of the agreement between the parents, Keith, and his siblings, it is clear that Richard and Rosalyn's intention was to create an opportunity for Keith to purchase the family farm "at its agricultural use value" unless the appraiser (chosen by Keith's siblings) had knowledge that Keith was not farming the land. (*See* Doc. No. 47). Here, the record reveals, at all times relevant, that Keith was farming the land. Thus, the only question for us to answer is whether or not the appraiser's value is the "agricultural use value" of the farm as of Rosalyn's passing.

{¶24} As we noted above, the agricultural-use value of farmland is an Ohio real estate tax program that sets farmland values below true market values for working farmers. Every year the Ohio Department of Taxation sets the agricultural-use values for each of Ohio's soil types, including use values of both cropland and woodland. *See* Ohio Adm.Code 5703-25-33(A) (2003) (current version at Ohio Adm.Code 5703-25-33(A) (2019)). Those tables are known as current-agricultural-use values or CAUV tables. The yearly CAUV valuation tables are subject to change based on soil, erosion, drainage, slope of the land, and other factors. *See*

Ohio Adm.Code 5703-25-33(F) (2003) (current version at Ohio Adm.Code 5703-25-33(F) (2019)). Hence, the agricultural-use value of the Fahncke-family farm in 2003 (the year the parties entered into the agreement) and 2018 (the date of Rosalyn's passing) will obviously differ.

{¶25} When the trial court construed that the absence of the word *current* (in the agreement) meant that the agricultural-use value is equal to fair-market value at current-market value, it rendered the term agricultural-use value and the contingency clause in the parties' agreement meaningless. The "C" in CAUV refers to the *currentness* of the agricultural-use-value table, which is compiled annually, and nothing else. *See* Ohio Adm.Code 5703-25-33. The absence of the term *current*—whether inadvertent or purposeful—was not dispositive as noted by the trial court. Moreover, the word *current* is superfluous under these circumstances because the IRS has specific-time frames for valuation after an election is taken based upon a qualified use. *See* 26 U.S.C. 2032(a) (defining the specific-time frames for valuation after an election is taken for qualified use). Additionally, the presence of the word "current" in the parties' agreement could further complicate the appraiser's valuation of the farm (as to which agricultural-use value to employ) between the date of the agreement value or the date of Rosalyn's death value.

{¶26} When considering whether to permit parole evidence regarding ambiguity of the term agricultural-use value, the trial court reasoned that the use of

language requiring an independent appraisal was indicative that the parents' intended to define fair-market value at current-market value because CAUV was a figure that was readily ascertainable from the Auglaize County Auditor's Office. Thus, negating any argument that this term is ambiguous. Because we concluded that the agreement is not ambiguous—parole evidence is not needed to discern the intent of the parents (notwithstanding this conclusion) it is inconsequential whether CAUV was readily ascertainable. The purpose of the independent appraisal was to meet the condition precedent in the contingency clause regarding Keith's use of the Fahncke-family farm. Put more plainly, the independent appraiser's task was to determine whether Keith was going to "farm" the land. If so, the agreement clearly states that the appraiser was to appraise the farm at its agricultural-use value.

{¶27} To construe this agreement otherwise would negate the parents' intention that this estate-planning tool be used to permit the multi-generational use of the Fahncke-family farm, to comply with Medicaid spend-down for the parents' Medicaid-eligibility determination, and to avoid federal-inheritance taxes as it relates to the Fahncke-family farm. (*See* Doc. No. 47).

{¶28} Accordingly, we conclude that the trial court erred in determining the meaning of fair-market value under the terms of the agreement. In this instance fair-market value at its agricultural-use value means "taxable value" and not "true value in money." Therefore, summary judgment was inappropriate.

**Defendants' Assignment of Error**

**The trial court erred in holding that Appellant/Cross Appellee, Keith A. Fahncke's, purchase option under the agreement did not lapse. Ohio Law and the Agreement is clear that a failure to affirmatory exercise the option within the specified timeframe causes the option to lapse and become null and void.**

{¶29} In their assignment of error, the defendants argue that the trial court erred by concluding that the purchase option under the terms of the agreement did not lapse.

{¶30} In light of our decision to sustain Keith, HAC, and Diane's assignments of error, we decline to address the defendants' assignment of error which is rendered moot. App.R. 12(A)(1)(c). *See MacDonald v. Webb Ins. Agency, Inc.*, 3d Dist. Allen No. 1-15-27, 2015-Ohio-4623, ¶ 41.

{¶31} Having found error prejudicial to the appellants herein in the particulars assigned and argued in their assignments of error, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

*Judgment Reversed and*
*Cause Remanded*

**SHAW, P.J. and PRESTON, J., concur.**

**/jlr**