[Cite as *Nichols v. Bixler*, 2021-Ohio-129.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| BEVERLY S. NICHOLS, ET AL. | : | JUDGES: |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiffs-Appellees | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | |
| JEFFREY J. BIXLER, INDIVIDUALLY | : | Case No. 2020 CA 00037 |
| AND AS TRUSTEE OF THE JO L. | : | |
| BIXLER TRUST | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Court of Common Pleas, Probate Division, Case No. 226829

JUDGMENT:      Affirmed

DATE OF JUDGMENT:      January 20, 2021

APPEARANCES:

For Plaintiffs-Appellees

TIMOTHY J. MOORE
4505 Stephen Circle, NW
Suite 101
Canton, OH 44718

RYAN J. MELEWSKI
105 North Broad Street
Canfield, OH 44406

For Defendant-Appellant

CRAIG T. CONLEY
604 Huntington Plaza
220 Market Avenue South
Canton, OH 44702

*Wise, Earle, J.*

{¶ 1}　Defendant-Appellant, Timothy J. Bixler, individually and as trustee of the Jo L. Bixler Trust, appeals several judgment entries, culminating in the February 14, 2020 findings of fact, conclusions of law, and judgment of the Court of Common Pleas of Stark County, Ohio, Probate Division, on the issue of agricultural use value and valuation.　Plaintiffs-Appellees are Beverly S. Nichols and Anthony Nichols.

FACTS AND PROCEDURAL HISTORY

{¶ 2}　The decedent, Jo L. Bixler, had four children, Jeffrey Bixler, appellant Timothy Bixler, Pamela Rose Bixler, and appellee Beverly Nichols.　On March 17, 2013, Jo Bixler executed a Restatement of Trust Agreement for the benefit of his four children plus his grandson, appellee Anthony Nichols.　The trust provided in pertinent part that upon his death, his son Jeffrey was to receive the first option to purchase the trust's real property "based upon the agricultural use value of said real estate."　The subject property consists of several parcels north of Hartville, Ohio, totaling approximately 290 acres.　A portion of the property contains a life estate for the benefit of Pamela.

{¶ 3}　Jo Bixler passed away on January 30, 2014.　Jeffrey was named successor trustee.

{¶ 4}　Jeffrey exercised his option and believed "agricultural use value" equaled the current agricultural use value (hereinafter "CAUV") as determined by the local auditors.　Appellees contested the value, claiming "agricultural use value" meant what a willing buyer would pay a willing seller for land where its best use is agricultural. Appellees obtained a higher appraisal from a certified farm real estate appraiser.

{¶ 5}　On August 10, 2016, appellees filed a complaint for declaratory judgment for determination on the meaning of the trust language among other requests.　A

hearing was held on May 31, 2017. By journal entry filed July 18, 2017, the trial court found "agricultural use value" to be ambiguous and determined Jo Bixler's intent to mean "the price that a willing farmer would pay a farmer willing to sell the collected properties as a farm, if the use was restricted to farming purposes." The trial court ordered updated appraisals of the subject properties and removed Jeffrey as successor trustee. Jeffrey's removal was affirmed on appeal. *Nichols v. Bixler,* 5th Dist. Stark No. 2017CA00152, 2018-Ohio-3234. Timothy became second successor trustee.

{¶ 6} Following the appeal to this court, a new trial court judge was assigned to the case. On February 28, 2019, appellant filed a motion for partial reconsideration on the issue of "agricultural use value." By judgment entry filed June 7, 2019, the trial court denied the motion.

{¶ 7} A hearing on valuation of the trust properties was held on November 22, 2019. By judgment entry filed January 8, 2020, the trial court determined the agricultural use value of the properties to be $6,300 per acre.

{¶ 8} By judgment entry filed January 30, 2020, the trial court approved an inventory and account as modified by the January 8, 2020 judgment entry. The total value of the properties was listed as $1,806,399.

{¶ 9} By findings of fact, conclusions of law, and judgment filed February 14, 2020, the trial court confirmed the agricultural use value to be $6,300 per acre for 286.2119 acres, and clarified that the residential use property subject to the life estate was valued at $16,000.

{¶ 10} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:

I

{¶ 11} "THE TRIAL COURT, THROUGH ITS JULY 18, 2017 AND JUNE 7, 2019 ENTRIES, ERRED IN ITS CONSTRUCTION OF THE TRUST TERM 'AGRICULTURAL USE VALUE'."

II

{¶ 12} "THE TRIAL COURT, THROUGH ITS JANUARY 8, JANUARY 30 AND FEBRUARY 14, 2020 ENTRIES, OTHERWISE ERRED IN SETTING THE VALUE OF THE TRUST'S AGRICULTURAL USE PROPERTY."

I

{¶ 13} In his first assignment of error, appellant claims the trial court erred in its construction of the term "agricultural use value." We disagree.

{¶ 14} Our standard of review of the trial court's decision on declaratory judgment is de novo, *Arnott v. Arnott,* 132 Ohio St.3d 401, 2012-Ohio-3208, 972 N.E.2d 586, ¶ 14:

The determination of the meaning of the disputed language of the trust at the heart of this case is a question of law. "A court's purpose in interpreting a trust is to effectuate, within the legal parameters established by a court or by statute, the settlor's intent." *Domo v. McCarthy,* 66 Ohio St.3d 312, 612 N.E.2d 706 (1993), paragraph one of the syllabus. Interpreting a trust is akin to interpreting a contract; as with trusts, the role of courts in interpreting contracts is "to ascertain and give effect to the intent of the parties." *Saunders v. Mortensen,* 101 Ohio St.3d 86, 2004-Ohio-24, 801 N.E.2d 452, ¶ 9. This court has held that "[t]he construction

of a written contract is a matter of law that we review de novo." *Id.* The same is true of the construction of a written trust; in both *In re Trust of Brooke,* 82 Ohio St.3d 553, 697 N.E.2d 191 (1998), and *Natl. City Bank v. Beyer,* 89 Ohio St.3d 152, 729 N.E.2d 711 (2000), this court applied a de novo standard of review in interpreting trust language in appeals of declaratory judgments.

{¶ 15} Language in an agreement can be "ambiguous if it is unclear, indefinite, and reasonably subject to dual interpretations or is of such doubtful meaning that reasonable minds could disagree as to its meaning." *Beverly v. Parilla,* 165 Ohio App.3d 802, 2006-Ohio-1286, 848 N.E.2d 881, ¶ 24 (7th Dist.). When the language is ambiguous, "there arises a factual question, and the court may consider extrinsic or parol evidence to ascertain the intent behind the language." *Id.* at ¶ 26. "Extrinsic evidence includes the circumstances surrounding the parties at the time the contract was made and the objectives they intended to accomplish by entering the contract." *Cadle v. D'Amico,* 7th Dist. Mahoning No. 15 MA 0136, 2016-Ohio-4747, ¶ 24, citing *Oryann, Ltd. v. SL & MB, L.L.C.,* 11th Dist. No. 2014-L-119, 2015-Ohio-5461. A decision on factual issues will not be reversed if it is supported by some competent, credible evidence. *C.E. Morris Co. v. Foley Construction Co.,* 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

{¶ 16} The trust provision at issue, Section 6.2 - Option to Purchase, states the following in pertinent part:

It is my intention and direction that my trust estate, after payment of all taxes and expenses pursuant to Section 5.2 hereof, be divided among my beneficiaries as set forth in Section 6.3 below. Such division of property may be made in money, units of Bixler & Son, LLC, or other property at my Trustee's sole discretion, and need not be pro-rata distributions of particular types of property. The Trustee shall exercise these powers of distribution in a fiduciary capacity primarily in the interests of the beneficiaries, subject to the valuation of units of Bixler & Son, LLC, as directed below.

I hereby give and grant to my son, Jeffrey J. Bixler, the first right and option to purchase any or all of the units of Bixler & Son, LLC, owned by me held in my trust within 18 months after my death at a valuation based upon the underlying value of real estate owned by Bixler & Son, LLC. The valuation of said units shall be based upon *the agricultural use value* of said real estate, and each unit shall have a value of one-one-hundredth (1/100) of the total value of such real estate holdings. It is my intention and direction that Jeffrey J. Bixler shall have the right and authorization to purchase said units even though he may be serving as Fiduciary and Trustee of my Trust estate at the time of purchase. (Emphasis added.)

{¶ 17} Appellant argues the term "agricultural use value" is not ambiguous and means the CAUV as determined by the local auditors. CAUV is a technical term for land valued in accordance with R.C. 5713.31 which governs assessing agricultural land

for real property tax purposes. The value is commonly below true market value for working farms. The CAUV is based on Ohio's soil types, crop yield, and land capability. Ohio Adm.Code 5703-25-33. The CAUV tables are determined yearly and are subject to change.

{¶ 18} In support of his argument, appellant cites the case of *Fahncke v. Fahncke,* 3d Dist. Auglaize No. 2-19-05, 2020-Ohio-433. In *Fahncke,* a written contract between parents and their seven children gave the oldest child the right to purchase the family farm at fair market value upon the deaths of the parents. The agreement went on to state that the appraiser shall appraise the property at its agricultural use value unless the appraiser knew that the property would not be used for farming, then the fair market value would apply. The trial court determined the property should be valued at its fair market value at current market value and not at its agricultural use value or current agricultural use value, reasoning that the absence of the word "current" in conjunction with "agricultural use value" in the agreement was dispositive. On appeal, our colleagues from the Third District disagreed, finding the absence of the word "current" was not dispositive as the trial court's decision "rendered the term agricultural-use value and the contingency clause in the parties' agreement meaningless." *Fahncke* at ¶ 25. The *Fahncke* court determined the terms in the agreement were not ambiguous.

{¶ 19} The issue in *Fahncke* was fair market value versus agricultural use value. The *Fahncke* court determined the absence of the word "current" did not change the intent of the valuation to one of fair market value. In the case sub judice, the issue is the technical CAUV versus agricultural use value or "farmer to farmer value" (what a willing buyer would pay a willing seller for farm land for agricultural use). No one is asserting fair market value at current market value for the property. Appellant claimed

the value for the properties was the CAUV value of $600,000 versus appellees' farmer to farmer value of 2.1 million.  T. at 4-5.

{¶ 20} In its journal entry filed July 18, 2017, the trial court determined the decedent was a sophisticated landowner who was well aware of Ohio's use of CAUV to determine real property tax values and had he intended for the properties to be appraised pursuant to the CAUV value, he would have used that term in the trust.  The trial court stated "the term 'agricultural use value' is not synonymous with the technical term 'current agricultural use value.' "  The trial court looked to extrinsic evidence "to aid in the interpretation of the trust language."  We agree the term "agricultural use value" as used in the subject trust agreement is ambiguous and turning to extrinsic evidence to determine the decedent's intent was proper.

{¶ 21} Attorney E. Lang D'Atri, a childhood friend of the decedent for "70 plus years" and his attorney, testified he prepared all of his estate planning documents including the trust agreement in question.  T. at 9-10, 12, 33, 34; Plaintiff's Exhibit 1.  He and the decedent discussed the term "agricultural use value" as used in the trust.  T. at 16.  Based on those discussions, Attorney D'Atri understood the term to mean "[w]hat a willing buyer, willing seller, would trade exchange land at fair market farming value.  Two farmers in other words what would it sell for between two farmers at a Kiko auction."  T. at 17.  When asked if the decedent's intent was to use CAUV values, Attorney D'Atri testified "[n]o, absolutely not."  T. at 27.  The decedent understood what the CAUV was and that it involved soil testing.  *Id.*  The decedent "was only interested in what a willing buyer and willing seller would pay for farming for agricultural use."  *Id.*  Attorney D'Atri went over several valuations with the decedent via "a summary of what 100 percent valuation was, the thirty five percent access value by the auditor and also

CAUV." T. at 28; Plaintiff's Exhibit K. The decedent was not interested in any of those valuations. *Id.* When the trust was first established, the decedent was concerned about tax liability after his passing. T. at 19, 21-22. Once the law changed in Ohio abolishing estate tax, the decedent's focus shifted to family planning "and the equitable division of his property among the children." T. at 23-24, 27-28.

{¶ 22} Jeffrey was unaware of the trust agreement prior to his father's death and had never discussed the meaning of the term "agricultural use value." T. at 114, 150-151, 153. Timothy and Pamela both testified they understood the term to mean the CAUV value or lower value. T. at 179, 181-183.

{¶ 23} The trial court found Attorney D'Atri's testimony to be credible and determined "agricultural use value" as used in Section 6.2 of the trust meant "the price that a willing farmer would pay a farmer willing to sell the collected properties as a farm." Journal Entry filed July 18, 2017. The trial court stated this definition furthers the decedent's intent to provide for the other beneficiaries. This decision was upheld by the subsequent trial court judge upon reconsideration. Judgment Entry filed June 7, 2019.

{¶ 24} With the decedent being gone, having his attorney who prepared the trust agreement is next best in this case. Attorney D'Atri was a lifelong friend and had numerous conversations with the decedent about his intentions for his properties. Attorney D'Atri was diligent in counseling the decedent on different valuations and he could recall what his understanding was of the decedent's wishes.

{¶ 25} Upon review, we find the original trial court judge did not err in the construction of the term "agricultural use value" as used in the subject trust agreement, and the subsequent trial court judge did not err in denying the motion for partial reconsideration.

{¶ 26} Assignment of Error I is denied.

II

{¶ 27} In his second assignment of error, appellant claims the trial court erred in setting the values for the properties. We disagree.

{¶ 28} An appellate court will not reverse a trial court's valuation if it is supported by some competent, credible evidence. *C.E. Morris, supra*; *Seasons Coal Co. v. Cleveland,* 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984).

{¶ 29} A hearing on valuation was held on November 22, 2019. The trial court heard from two expert appraisers, John Emig for appellant and Roger Sours for appellees. Mr. Emig opined the properties had an agricultural use value of $5,000 per acre for an approximate total of $1.4 million. T. at 157, 233; Trustee Exhibit 1. Mr. Sours opined the value was $7,500 per acre for an approximate total of $2.1 million. T. at 35, 233; Plaintiff's Exhibits A and B. In its judgment entries filed January 8, and 30, 2020, the trial court found the agricultural use value of the properties to be $6,300 per acre with a total value of $1,806,399. In its findings of fact and conclusions of law and judgment filed February 14, 2020, the trial court found the following in pertinent part:

1. Neither expert witness could locate sale prices for real estate matching the Trust property.

2. Both expert witnesses relied on adjusted real estate sales prices that they inferred were comparable to the market value for the Trust property.

7. Sale price per acre range from $5,600 to $11,378 in Exhibits A and B [Sours Appraisal] and that, after adjustments, the adjusted range is from $6,239 to $10,269 per acre.

8. Sale price per acre range in Trust Exhibit #1 [Emig Appraisal] is from $1,430 to $6,757 and that, after adjustments, the adjusted range is from $2,503 to $7,794 per acre.

9. From the assumptions and limiting conditions explained in Exhibits A and B, and Trust Exhibit #1, real estate appraising is not an exact science and, like beauty, might be in the eyes of the beholder.

10. The strength and soundness of the witnesses' testimony is influenced by their qualifications, the comparable properties that they used, their interpretation of the similarities of the comparable properties to the Trust property, and the reasonableness of their conclusions since none of the comparables properties are matches to the Trust property.

15. The Trust property should be attractive to a farmer willing to purchase a 286 acre farm because it is an operating family farm in Stark and Portage Counties where there is easy access to farm markets and suppliers, transportation and population centers.

{¶ 30} The trial court acknowledged that Mr. Sours appraised the properties in two separate groups as opposed to collectively, and Mr. Emig appraised the properties collectively and appraised the life estate property at $16,000.  Findings of Fact Nos. 12 and 13.

{¶ 31} On cross-examination, Mr. Sours indicated he did not separately value the life estate property in his appraisal. T. at 49. He admitted a property with a life estate would lessen the value of the property. T. at 50-51. He agreed that considering the life estate would have had a negative impact on the $7,500 per acre value. T. at 53. There was no testimony as to how much it would have lowered the per acre valuation; however, on redirect pertaining to the life estate, Mr. Sours was asked if he had any "reason to believe that it would be substantially more of a detriment to the rest of the property" and he replied in the negative. T. at 133. Mr. Emig valued the approximate half acre life estate property at $16,000 and treated it as "a separate component of the total valuation." T. at 154, 156-157. Each appraiser explained at length how they arrived at their respective valuations using comparables and making adjustments.

{¶ 32} The trial court's final decision on valuation was set forth in Findings of Fact No. 16: "After a thorough review of the evidence, the Court has found that the agricultural use value of the Trust real property as of January 30, 2014 was $6,300 per acre for the 286.2119 acres and $16,000 for the property subject to the life estate."

{¶ 33} The trial court did not give any further explanation as to how it settled on the $6,300 per acre valuation; however, said valuation is on the low end of the adjusted range in the Sours appraisal and on the high end of the adjusted range in the Emig appraisal. Additionally, we point to the trial court's Findings of Fact No. 14:

> Both Mr. Emig and Mr. Sours considered the West Township, Columbiana property a comparable sale. Mr. Emig took the sale price of $6,757 per acre and, after adjustment, reduced the price to $5,499 per acre. Whereas, Mr. Sours took the sale price of $6,860 per acre, after

adjustment, increased the price to $7,889 per acre. Value indicators are subject to interpretation.[1] (Footnote added by this court for clarification.)

{¶ 34} In specifically highlighting the sole comparable property used by both experts, the trial court obviously found this property significant in its analysis.[2] The trial court's valuation of $6,300 per acre falls very neatly within the midrange of the experts' appraisals of this comparable property. It appears the trial court was "splitting the difference" of both the overall range of the valuations of all the properties in the appraisals as well as giving extra attention to the sole comparable property used by both experts. We cannot find the trial court's decision is not supported by the record.

{¶ 35} We have considered appellant's arguments regarding Mr. Sours's failure to follow the trial court's "marching orders" and find them to lack merit. It is clear the trial court acknowledged Mr. Sours's methodology and took it into consideration by not adopting the valuation in his appraisal. Findings of Fact Nos. 12 and 13.

{¶ 36} Upon review, we find the trial court did not err in its valuation of the trust properties.

{¶ 37} Assignment of Error II is denied.

---

[1]The discrepancy in the starting point of the sale price per acre ($6,757 versus $6,860) is explained by the use of two different total acreage numbers for the property. Mr. Emig used 60.676 acres while Mr. Sours used 59.761 acres. Dividing the sale price of the property, $410,000, by the two different acreages result in the $103 difference in price per acre before each expert made his respective adjustments.

[2]The property is located at 9188 Lowmiller Road, West Township, Columbiana County, Ohio. Mr. Sours used this property in his appraisals as Sale #1; Plaintiff's Exhibits A, pages 35, 39; Plaintiff's Exhibit B, pages 32, 35. Mr. Emig used this property as Sale #3; Trust Exhibit 1, pages 73, 82.

{¶ 38} The judgment of the Court of Common Pleas of Stark County, Ohio, Probate Division is hereby affirmed.

By Wise, Earle, J.

Delaney, P.J. and

Baldwin, J. concur.


EEW/db