*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

US FRAMING INTERNATIONAL, LLC,

        Plaintiff/Counterdefendant-
        Appellee/Cross-Appellant,

v

CONTINENTAL REAL ESTATE COMPANIES,
doing business as CONTINENTAL BUILDING
COMPANY,

        Defendant/Counterplaintiff-
        Appellant/Cross-Appellee,

and

CCSHP ANN ARBOR 1, LLC, and HARTFORD
FIRE INSURANCE COMPANY,

        Defendants/Counterplaintiffs.

UNPUBLISHED
September 29, 2022

No. 356163
Washtenaw Circuit Court
LC No. 18-000663-CB

Before: GLEICHER, C.J., and GADOLA and YATES, JJ.

PER CURIAM.

In this contract dispute, defendant, Continental Real Estate Companies, doing business as Continental Building Company (Continental), appeals by leave granted[1] the trial court's order granting summary disposition to plaintiff, US Framing International, LLC (US Framing), of Continental's counterclaim on the basis that the counterclaim was time-barred under the terms of the parties' contract. US Framing cross-appeals, challenging the trial court's denial of its motion for clarification of the trial court's order granting summary disposition. We reverse the trial court's

---

[1] *US Framing Int'l LLC v CCSHP Ann Arbor 1 LLC*, unpublished order of the Court of Appeals, entered May 6, 2021 (Docket No. 356163).

order granting US Framing summary disposition of Continental's counterclaim, affirm the trial court's order denying US Framing's motion for clarification, and remand for further proceedings.

## I.  FACTS

This case involves a contract dispute arising from a project to build mixed-use commercial retail and off-campus student housing in Ann Arbor.  Defendant CCSHP Ann Arbor 1, LLC, owns the property in question and hired Continental to serve as general contractor for the project. Continental subcontracted with US Framing to provide wood-framing labor and materials for the project.  The contract between Continental and US Framing detailed the parties' respective rights and obligations.  The parties disagree whether US Framing fulfilled its obligations under the contract regarding timeliness and work quality.  US Framing maintains that it fully performed its obligations under the contract, while Continental maintains that US Framing performed untimely and substandard work resulting in considerable costs to Continental.  The parties do not dispute that US Framing's last day working on the project was April 11, 2018.

Paragraph 15.2 of the parties' contract provides that "[a]ll claims, disputes and matters in question arising out of, or relating to this Agreement or the breach thereof," were to be resolved by litigation after pursuing dispute resolution.  That same paragraph provides that any suit commenced for that purpose must be commenced "no later than (1) year from the date when the cause of action occurred or three (3) months after the Subcontractor last performed on the Project, whichever comes first."  The parties' contract also contains a choice-of-law provision.  Both ¶13.4.2 and ¶16.2 of the contract provide that "[t]he law governing the interpretation and enforcement of the Agreement shall be that of the jurisdiction where the office of the Contractor is located as shown on this Agreement."  Article 1 of the parties' contract states that the Contractor's office is located in Ohio.

On June 12, 2018, US Framing initiated this action by filing its complaint.  In its amended complaint filed July 24, 2018, US Framing alleged, in part, that Continental breached the contract between the parties and therefore owed US Framing $1,239,298.46.  Continental answered the amended complaint and submitted affirmative defenses, including defenses of recoupment and setoff.  On November 1, 2018, Continental counterclaimed against US Framing for breach of contract.

US Framing moved under MCR 2.116(C)(10) for summary disposition of Continental's counterclaim, asserting that the counterclaim was time-barred by the contractual limitations period in ¶ 15.2 of the parties' contract because it was filed more than three months after US Framing last performed on the project.  Continental opposed the motion, arguing that ¶ 15.2 did not affect the timeliness of its counterclaim.  The parties also disputed whether Michigan or Ohio law applied to the interpretation of ¶ 15.2 in light of the choice-of-law provision of the contract.  Applying Michigan law, the trial court granted summary disposition to US Framing of Continental's counterclaim, concluding that the counterclaim was time-barred by ¶ 15.2 of the parties' contract. The trial court denied Continental's motion for reconsideration.

On December 2, 2020, US Framing moved for clarification of the trial court's October 7, 2019 order granting summary disposition, essentially challenging Continental's affirmative defenses as merely a reassertion by Continental of its dismissed counterclaim.  The trial court

denied US Framing's motion for clarification. This Court granted Continental's application for leave to appeal the trial court's order granting US Framing summary disposition of Continental's counterclaim. US Framing cross-appealed, challenging the trial court's denial of its motion for clarification.

## II. DISCUSSION

Continental contends that the trial court erred by granting US Framing summary disposition of Continental's counterclaim. Continental argues that its counterclaim was not time-barred by ¶ 15.2 of the parties' contract that required the parties to file "suit" within a specified time, and that once US Framing timely commenced the suit, Continental was entitled to file a counterclaim. We agree.

### A. STANDARD OF REVIEW

We review de novo a trial court's decision to grant or deny summary disposition. *Meemic Ins Co v Fortson*, 506 Mich 287, 296; 954 NW2d 115 (2020). A motion for summary disposition under MCR 2.116(C)(10) is properly granted when no genuine issue of material fact remains and the moving party is entitled to judgment as a matter of law. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019). When reviewing a trial court's decision on a motion for summary disposition, we consider the affidavits, pleadings, depositions, admissions, and other documentary evidence submitted by the parties in the light most favorable to the party opposing the motion. *Johnson v Vanderkooi*, 502 Mich 751, 761; 918 NW2d 785 (2018). A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might disagree. *Id*. We also review de novo the proper interpretation of a contract. *Innovation Ventures v Liquid Mfg*, 499 Mich 491, 507; 885 NW2d 861 (2016).

### B. CHOICE OF LAW

We address initially Continental's contention that the trial court erred by applying Michigan law.[2] The parties' contract contains a choice-of-law provision, unambiguously selecting Ohio law as "[t]he law governing the interpretation and enforcement of the Agreement." In general, Michigan public policy favors enforcing contractual choice-of-law provisions. *Barshaw v Allegheny Performance Plastics, LLC*, 334 Mich App 741, 748; 965 NW2d 729 (2020). Michigan courts will enforce contractual choice-of-law provisions if certain conditions are met. *Turcheck v Amerifund Fin, Inc*, 272 Mich App 341, 346; 725 NW2d 684 (2006), citing *Chrysler Corp v Skyline Ind Servs, Inc*, 448 Mich 113, 126-127; 528 NW2d 698 (1995) (a choice-of-law contract provision was enforceable when the parties and the transaction had substantial relationship to the choice-of-law jurisdiction). We will not defer to the parties' choice of law, however, when the parties' choice of law has no substantial relationship to the parties or the transaction, the parties had no reasonable basis for choosing that state's law, or when applying the chosen state's law would be contrary to a fundamental policy of the state that has a materially

---

[2] When an action is filed in Michigan, the court determines as an initial matter whether a party is bound by a choice-of-law provision in a contract. *Barshaw v Allegheny Performance Plastics, LLC*, 334 Mich App 741, 748; 965 NW2d 729 (2020).

greater interest than the state chosen. *Vanalstine v Land O'Lakes Purina Feeds, LLC*, 326 Mich App 641, 648-649; 929 NW2d 789 (2018).

Even when the substantive law of another state applies by virtue of a contractual choice-of-law provision, however, Michigan law governs procedure. *Rubin v Gallagher*, 294 Mich 124, 127; 292 NW 584 (1940) ("[T]he procedure and remedy for the enforcement of such substantive rights in Michigan are governed by the laws of this State"). Here, notwithstanding the parties' contractual choice-of-law provision, the trial court applied Michigan law on the basis that issues related to periods of limitation typically are considered procedural matters. *See Genesee Co Drain Comm'r v Genesee Co*, 309 Mich App 317, 332; 869 NW2d 635 (2015) (In Michigan, "a statute of limitation is a procedural, not a substantive rule").

Continental contends that the trial court incorrectly considered the issue a procedural one because in this case the limitations period in question is *contractual* rather than statutory, and that the parties' choice of Ohio law therefore should be honored with respect to the interpretation of ¶ 15.2 of the parties' contract. We find it unnecessary in this case, however, to decide this choice-of-law dispute because we are persuaded that the interpretation of ¶ 15.2 would be the same under either Ohio or Michigan law, as discussed below. See *Turcheck*, 272 Mich App at 348 (declining to decide which state's law would govern applicability of a contractual clause when the parties' forum-selection clause was "equally enforceable under either Michigan or Washington law").

## C. PARAGRAPH 15.2

At issue in this case is the interpretation and application of ¶ 15.2 of the parties' contract, which states:

> Litigation. **All claims, disputes and matters** in question arising out of, or relating to, this Agreement or the breach thereof, except for claims which have been waived by the making or acceptance of final payment, and the claims described in Paragraph 15.2, **shall be decided by litigation** but subject to initial dispute resolution as prescribed in paragraph 15.1. To the extent not otherwise mandated by the law of the jurisdiction where the Project is located, any such litigation shall be subject to the authority of a court of competent jurisdiction where the office of the Contractor is located as shown on this Agreement to which jurisdiction the Subcontractor hereby agrees. **Every such suit shall be commenced** not later than one (1) year from the date when the cause of action occurred or three (3) months after the Subcontractor last performs work on the Project, whichever shall occur first. [Emphasis added.]

The parties do not dispute that under ¶ 15.2 the applicable time limit for initiating a lawsuit was three months from the time US Framing last performed work on the project, which the parties agree was April 11, 2018. Accordingly, under ¶ 15.2 the parties were required to commence suit, if at all, by July 11, 2018. US Framing filed the current suit within the requisite period. Continental filed its counterclaim in November 2018, outside the three-month window of ¶ 15.2.

We conclude that under either Ohio or Michigan law, the trial court erred by interpreting ¶ 15.2 as a time bar to Continental's counterclaim. Under Michigan law, the primary goal when

interpreting a contract is to determine and give effect to the parties' intent. *Edmore v Crystal Automation Sys, Inc*, 322 Mich App 244, 262; 911 NW2d 241 (2017). When interpreting a contract, we give contractual terms their ordinary meanings when the terms are not defined within the contract. *Barton-Spencer v Farm Bureau Life Ins Co of Mich*, 500 Mich 32, 39; 892 NW2d 794 (2017). Contracts must be read as a whole, and words must be considered in context; we give effect to every word, clause, and phrase, and avoid a construction that would render any part of the contract surplusage or nugatory. *Magley v M & W Inc*, 325 Mich App 307, 317-318; 926 NW2d 1 (2018). When the words of a contract are undefined, generally a dictionary should be consulted to determine the ordinary meanings of the words. *Andrusz v Andrusz*, 320 Mich App 445, 454; 904 NW2d 636 (2017). "Different words are presumed to have distinct meanings." *Id.*; see also, e.g., *McNeel v Farm Bureau Gen Ins Co of Mich*, 289 Mich App 76, 92; 795 NW2d 205 (2010) (construing two similar terms within a contract—vacant and unoccupied—to have different meanings). When a contract is unambiguous, it must be enforced as written. *Andrusz*, 320 Mich App at 453. An unambiguous contractual provision that provides for a shortened period of limitation is enforced as written unless to do so would violate either the law or public policy. *Rory v Continental Ins Co*, 473 Mich 457, 470; 703 NW2d 23 (2005).

Ohio's rules for contract interpretation are very similar. Contract interpretation begins "with the primary interpretive rule that courts should give effect to the intentions of the parties as expressed in the language of their written agreement." *Sutton Bank v Progressive Polymers, LLC*, 161 Ohio St 3d 387, 391; 2020-Ohio-5101; 163 NE3d 546 (2020). Undefined terms are given their plain and ordinary meaning. *Sanzo Enterprises, LLC v Erie Ins Exch*, 2021-Ohio-4268, ¶ 37; 182 NE3d 393 (Ohio App, 2021). It should be presumed "that words are used for a specific purpose," and courts "will avoid interpretations that render portions meaningless or unnecessary." *Fahncke v Fahncke*, 2020-Ohio-433, ¶ 18; 151 NE3d 1130 (Ohio App, 2020) (quotation marks and citation omitted). Generally, the use of different words conveys the parties' intent that the words possess different meanings. *Dublin v Friedman*, 2017-Ohio-9127, ¶ 43; 101 NE3d 1137 (Ohio App, 2017).

Interpreting ¶ 15.2 consistently with US Framing's arguments, the trial court concluded that Continental's counterclaim constituted a "suit" within the meaning of ¶ 15.2 and that this suit was untimely because it was not filed within three months of the date US Framing ceased work on the project. Continental argues that ¶ 15.2 recognizes a distinction between a "suit" and a "claim," and that although the overall suit must be initiated within three months, once litigation has begun, additional claims, including counterclaims, may be filed without running afoul of ¶ 15.2.

Our review of the parties' contract reveals that ¶ 15.2 is unambiguous. The first sentence of ¶ 15.2 dictates that all "claims, disputes and matters" arising out of, or relating to, the contract must be "decided by litigation." The final sentence of the paragraph establishes a deadline by which that litigation must begin, which is that every such "suit" must be commenced not later than three months after US Framing last worked on the project. The word "suit" means "an action or process in a court for the recovery of a right or claim." *Merriam-Webster Collegiate Dictionary* (11th ed). See also *Black's Law Dictionary* (11th ed) (defining a "suit" as "[a]ny proceeding by a party or parties against another in a court of law"). A "claim" is "a demand for something due or believed to be due." *Merriam-Webster Collegiate Dictionary* (11th ed). See also *Black's Law Dictionary* (11th ed) (defining a "claim" to mean "[t]he assertion of an existing right; any right to payment or to an equitable remedy, even if contingent or provisional"). A "dispute" in this context

is reasonably understood to mean "[a] conflict or controversy, esp. one that has given rise to a particular lawsuit." *Black's Law Dictionary* (11th ed). The term "matters" in this context refers to "[a] subject under consideration, esp. involving a dispute or litigation." *Black's Law Dictionary* (11th ed).

Giving meaning to both the first and last sentences in the paragraph, it is apparent that the word "suit" in ¶ 15.2 was not used synonymously with the word "claim" and that ¶ 15.2 should not be read to require each individual claim—or counterclaim or dispute or matter—to be filed within three months of when US Framing stopped work on the project.[3] Paragraph 15.2 anticipated that litigation between the parties would decide "claims," "disputes," and "matters" arising from and relating to the contract. By requiring the commencement of "every such suit" within a certain period, ¶ 15.2 simply mandated that the legal proceedings in court must begin by a set time. Once "suit" has been timely commenced, ¶ 15.2 is satisfied, and there is nothing in that paragraph restricting the parties' litigation of their claims, counterclaims, disputes, or other matters within the context of that suit. That is, ¶ 15.2 does not purport to regulate the time for further filings within the suit.

This reading of ¶ 15.2 reflects the normal course of civil proceedings. A civil suit is commenced by filing a complaint with a court. MCR 2.101. Thereafter, a counterclaim may be filed, but the filing of a counterclaim does not commence a suit; it is instead a pleading setting forth a cause of action within the context of a suit that has already been commenced. See *Black's Law Dictionary* (11th ed) (defining "counterclaim" as "[a] claim for relief asserted against an opposing party after an original claim has been made; esp., a defendant's claim in opposition to or as a setoff against the plaintiff's claim"). Thus, a counterclaim is commonly understood to be part of a suit filed after the commencement of the suit. See, e.g., *Cargill, Inc v Commodity Credit Corp*, 275 F2d 745, 748 (CA 2, 1960) (distinguishing "claims" from "suits" and characterizing a counterclaim as "part of the 'suit' "); in accord *Lehman Bros Commercial Corp v Minmetals Intern Non-Ferrous Metals Trading Co*, 169 F Supp 2d 186, 193 (SDNY, 2001).[4] Indeed, once suit is commenced, it is not uncommon for the litigation to consist of various additional claims, counterclaims, cross-claims, etc. In this regard, we note that US Framing amended its complaint in this case on July 24, 2018, after the expiration of the contractual limitations period for commencing the suit.

Continental's counterclaim was not a separate "suit" that must be "commenced" within the time set forth in ¶ 15.2. Once US Framing timely commenced the current suit, it opened itself up

---

[3] US Framing argues that in *Adair v State*, 486 Mich 468, 493; 785 NW2d 119 (2010), the Michigan Supreme Court concluded that a single claim standing alone constituted a "suit." *Adair*, however, does not mandate that every claim is a separate suit for all purposes; rather, the Court in *Adair* observed that in that case, the single remaining claim continued to constitute a suit after the other claims were dismissed.

[4] Although nonbinding upon Michigan courts, decisions of lower federal courts may be considered persuasive. See *In re Estate of Vansach*, 324 Mich App 371, 388 n 8; 922 NW2d 136 (2018).

to all the normal incidents of litigation, including a counterclaim. The trial court erred by concluding that Continental's counterclaim was time-barred by ¶ 15.2.[5]

## D. US FRAMING'S CROSS-APPEAL

On cross-appeal, US Framing contends that the trial court abused its discretion by denying its motion for clarification as untimely without considering the merits of the motion or hearing oral arguments. Having concluded that the trial court erred by granting summary disposition of Continental's counterclaim, US Framing's cross-appeal related to its motion to clarify is moot because there would be no practical benefit to ordering further clarification of the trial court's erroneous ruling. See *Thomas M Cooley Law Sch v Doe 1*, 300 Mich App 245, 254; 833 NW2d 331 (2013) ("A matter is moot if this Court's ruling cannot for any reason have a practical legal effect on the existing controversy.") (Quotation marks and citation omitted).

We also observe that US Framing's motion for clarification was essentially a request for dismissal of Continental's affirmative defenses of recoupment and setoff. In seeking dismissal of Continental's affirmative defenses, US Framing sought new and dispositive relief not raised in its earlier motion for summary disposition. Insofar as US Framing sought relief related to Continental's affirmative defenses, the motion was filed after the deadlines for motions set forth in the trial court's scheduling order. See MCR 2.401(B)(2)(a)(*ii*). In these circumstances, the trial court did not abuse its discretion by enforcing its scheduling order and denying US Framing's motion as untimely. See *Kemerko Clawson LLC v RXIV Inc*, 269 Mich App 347, 349-351; 711 NW2d 801 (2005). The trial court also acted within its discretion by dispensing with oral argument. See MCR 2.119(E)(3).

We reverse the trial court's order granting US Framing summary disposition of Continental's counterclaim, affirm the trial court's order denying US Framing's motion for clarification, and remand for further proceedings. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Michael F. Gadola
/s/ Christopher P. Yates

---

[5] Having determined that Continental's counterclaim was not untimely under ¶ 15.2, we find it unnecessary to address Continental's assertion that the period for filing suit under ¶ 15.2 would be considered unreasonable and unenforceable under Ohio law.